**Eva GARRETT, Individually and as Administratrix for the Estate of Linda Kay Johnson, Deceased, Plaintiff-Appellee,**

v.

**Lloyd RADER and Norman Smith, Defendants-Appellants.**

**Nos. 86–1711, 86–1716.**

United States Court of Appeals, Tenth Circuit.

Oct. 13, 1987.

Thomas H. Tucker, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, Okl., for defendant-appellant Lloyd E. Rader.

David W. Lee, Asst. Atty. Gen., State of Okl. (Michael C. Turpen, Atty. Gen., State of Okl. with him on the brief), Oklahoma City, Okl., Attys. for defendant-appellant Norman Smith.

Loyde H. Warren, Oklahoma City, Okl., Atty. for plaintiff-appellee Eva Garrett.

Before SEYMOUR and BARRETT, Circuit Judges, and BROWN, Senior District Judge.[*]

WESLEY E. BROWN, Senior District Judge.

In January 1983, this civil rights action was filed pursuant to 42 U.S.C. Sec. 1983 by Eva Garrett, the mother of Linda Kay Johnson, deceased. At the time of her death on February 5, 1980, Linda Kay was a resident of Pauls Valley State School, a state institution for retarded children.

In her complaint, plaintiff alleged that her daughter, who suffered from seizures, died while being unreasonably restrained by employees at the Pauls Valley State School. Plaintiff claims that the defendant, Norman Smith, who was Superintendent of the school, and his co-defendant,

---

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

Lloyd Rader, who was the Director of the Department of Human Services for the State of Oklahoma, failed to adequately monitor, supervise, hire, and train, direct-care personnel at the school, and that they were therefore liable under 42 U.S.C. Sec. 1983.[1]

Defendants bring these appeals from an Order of the district court entered on April 21, 1986, which denied their motions for summary judgment. They claim that they are entitled to the protection of qualified immunity to damage liability under Section 1983 because they did not violate any "clearly established" rules relating to the care of mentally retarded children at the Pauls Valley School. Because we agree with the district court that there are factual issues which preclude a determination of the question of qualified immunity as a matter of law, the Order denying the motions for summary judgment will be affirmed.

On October 12, 1984, the district court entered an order denying defendants' motions to dismiss for failure to state a claim, finding that plaintiff had sufficiently alleged an "affirmative link" between defendants' alleged misconduct and the conduct of those they supervised. In addition, the court ruled that the question of qualified immunity should await a development of a factual record. Defendants then moved for summary judgment upon the basis of qualified immunity and these motions were denied on April 29, 1985. Defendant Rader appealed from this Order, and this Court granted a temporary stay of discovery pending the appeal. On July 18, 1985, a panel of this Court entered its Order and Judgment finding that the record in the case was insufficient to determine whether or not Rader's claim of qualified immunity was "at least colorable" and appealable, and the case was remanded for a determination by the district court as to whether Rader had made a colorable claim that his actions "did not violate clearly established law." *Eva Garrett v. Lloyd E. Rader,* No. 85–1779, Order and Judgment of July 18, 1985.

Following remand, defendants filed new motions for summary judgment, claiming that since the due process rights of inmates in state mental institutions were not established until the decision of the Supreme Court in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the defendants are protected by the doctrine of qualified immunity, under the ruling in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The trial court found that while *Youngberg* did establish for the first time the obligation of the state to provide a minimum level of *specialized training* for patients in mental institutions, the *Youngberg* court also recognized the existence "of a well-established due process due to provide reasonably safe living conditions and to otherwise make adequate provisions for the personal security of patients in state institutions." (Order of 4/21/86, p. 2)

As noted by the trial court, the *Youngberg* decision explicitly recognized the due process rights of parties in state institutions which were entitled to protection long before the death of Linda Kay Johnson in 1980. In discussing those rights the Supreme Court there stated:

> The mere fact that Romeo has been committed under proper procedures does not deprive him of all substantive liberty interests under the Fourtheenth (sic) Amendment.... Indeed, the State concedes that respondent has a right to adequate food, shelter, clothing, and medical care. We must decide whether liberty interests also exist in safety, freedom of movement, and training....
>
> *Respondent's first two claims involve liberty interests recognized by prior decisions of this Court, interests that involuntary commitment proceedings do not extinguish.* The first is a claim to

---

1. Lloyd E. Rader died on December 6, 1986, and plaintiff filed Motion to substitute his personal representative and administrator as party defendant. Because the case had been appealed to this court, the district court denied the motion for absence of jurisdiction. A similar motion is pending before this court. Because of our disposition on appeal, the district court will have jurisdiction to consider substitution.

safe conditions. In the past, this Court has noted that the right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause. *Ingraham v. Wright,* 430 U.S. 651, 673, 51 L.Ed.2d 711, 97 S.Ct. 1401 [1413] (1977). And that right is not extinguished by lawful confinement, even for penal purposes.... If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions.

Next, respondent claims a right to freedom from bodily restraint. In other contexts, the existence of such an interest is clear in the prior decisions of this Court. Indeed, '(*l*)iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.' *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 18, 60 L.Ed.2d 668, 99 S.Ct. 2100 [2109] (1979) (Powell, J., concurring in part and dissenting in part). This interest survives criminal conviction and incarceration. Similarly, it must also survive involuntary commitment. (Emphasis supplied). *Youngberg v. Romeo,* 457 U.S. at pp. 314–316, 102 S.Ct. at pp. 2457–2458, 73 L.Ed.2d at pp. 36–37.

In *Harlow v. Fitzgerald, supra,* the Supreme Court discussed the dimensions of the affirmative defense of qualified immunity, ruling that bare allegations of malicious conduct "should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery," and holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable persons would have known." 457 U.S. at 817, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. The issue may be tested upon a motion for summary judgment:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct ... the defense would turn primarily on objective factors." *Harlow v. Fitzgerald,* 457 U.S. at pp. 818–819, 102 S.Ct. at p. 2738, 73 L.Ed.2d at pp. 410–411.

In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court explained that the *Harlow* decision established the rule that "(u)nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." 472 U.S. at 526, 105 S.Ct. at 2816, 86 L.Ed.2d at 425. Under such circumstance, the *Mitchell* court ruled that a district court's denial of a claim of qualified immunity, "to the extent that it turns on an issue of law," is an appealable final decision under 28 U.S.C. Sec. 1291. 472 U.S. at 530, 105 S.Ct. at 2817, 86 L.Ed.2d at 427.

In *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) the Supreme Court ruled that the test of what is "clearly established law" should be determined in a particularized sense, that is, that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" with the proviso that "(t)his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in

the light of preexisting law the unlawfulness must be apparent." [2]

Adopting the standards set out in *Anderson v. Creighton,* and *Garcia v. Miera,* 817 F.2d 650 (10th Cir.1987), we find that at least by the time of the death of Linda Kay Johnson, the law requiring protection of the personal security of inmates and patients in state institutions was clearly established. In this case, plaintiff claims that her daughter was physically abused by employees of the Pauls Valley State School, and that defendants are responsible for such abuse due to their failure to properly hire and train the personnel who were working directly with patients at the school. In addition, plaintiff claims that there was a long-standing history of neglect and physical abuse of patients at the institution, and that defendants knew about such abuse, but failed to take any corrective action to prevent it. While plaintiff's claims may not prevail at trial, they are sufficient to overcome defendants' motion for summary judgment; *see Garcia v. Miera, supra,* and *Wolfenbarger v. Williams, et al.,* 826 F.2d 930, (10th Cir.1987).[3]

The Order of the district court denying defendants' Motions for Summary Judgment is AFFIRMED, and this case is remanded for further proceedings.

---

2. In applying *Harlow* rule, some courts have required a relatively strict factual identity, while others have required that officials "know and apply general legal principles in appropriate factual situations." See *People of Three Mile Island v. Nuclear Reg. Com'rs,* 747 F.2d 139, 144 (3rd Cir.1984). In *Garcia v. Miera,* 817 F.2d 650 (10th Cir.1987), petition for *certiorari pending,* a panel of this Court adopted the Third Circuit approach, "requiring some but not precise factual correspondence and demanding that officials apply general, well developed legal principles."

3. In its prior Order denying defendants' motions to dismiss (10/12/84), the district court recognized that mere supervisory negligence was not sufficient to establish the affirmative link necessary to subject defendants to liability under Sec. 1983. The court found that although plaintiff's allegations were couched in terms of negligence, if proved at trial such allegations could establish "something more than ordinary negligence" on the part of Rader and Smith as supervisory personnel. See *McClelland v. Facteau,* 610 F.2d 693 (10th Cir.1979).