Allan F. ARCHER, Jr.,
Plaintiff–Appellee,

v.

Gilbert SANCHEZ,
Defendant–Appellant.

No. 88–2773.

United States Court of Appeals,
Tenth Circuit.

June 3, 1991.

Rehearing Denied July 1, 1991.

E. James Hardgrave, Las Vegas, N.M., for plaintiff-appellee.

John L. Lenssen of Lenssen and Mandel, and Frank J. Albetta of Simons Cuddy & Friedman, Santa Fe, N.M., for defendant-appellant.

Before MOORE and BALDOCK, Circuit Judges, and ANDERSON, District Judge.*

JOHN P. MOORE, Circuit Judge.

Allan F. Archer, Jr., the former Director of Development and Alumni Affairs at New Mexico Highlands University, institut-ed suit alleging he was terminated without notice and a hearing in violation of his civil rights. This interlocutory appeal of the district court's denial of summary judgment on qualified immunity grounds again seeks to derail the action. We decline to do so and affirm.

Mr. Archer was hired by New Mexico Highlands University (the University) under a written contract, "[i]n accordance with the Statutes of the State of New Mexico and the Bylaws and Regulations of the University Board of Regents," for a term of one year from July 1, 1986, to June 30, 1987. The contract designated his appointment as Director of the University Foundation and Alumni Affairs. On January 8, 1987, Mr. Archer received a letter from Gilbert Sanchez, president of the University and with whom he had negotiated his contract, stating he was terminated, effective January 23, 1987. When Mr. Archer later met with Mr. Sanchez, he was shown a copy of the *Secretarial, Clerical and Physical Plant Personnel Policy & Procedures Manual* (the Manual) for the University and told that a specific provision, stating that he served "at the pleasure of the President of the University," supported the firing.[1]

Mr. Archer filed suit under 42 U.S.C. § 1983, alleging Mr. Sanchez and the Board of Regents deprived him of due process by terminating his employment contract without cause. Additional state claims for damages for breach of contract and the intentional infliction of emotional distress were appended. However, only the § 1983 claim against Mr. Sanchez in his individual capacity survived the winnowing of prelimi-

---

* The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

1.  Section I.B.8 of the Manual states:
    8. *Exempt Employees*
    8.1 Professionals, Executive, Administrators and Faculty are considered to be part of, and an arm, of management. They are expected to spend the amount of time and intellectual energy necessary to do an exemplary job, to set the highest standards and to provide leadership by example to all other employees.

They are not covered by this manual except for the following.

Executive, Administrative and Faculty personnel shall be subjected to the provisions of this manual which establish duties of them but they shall not be granted any of the benefits contained in this manual. Professional, Executive and Administrative personnel shall serve at the pleasure of the President of the University and shall be subject to such terms and conditions of employment as he so establishes, said terms and conditions may differ

nary motions.[2]

In support of his motion for partial reconsideration of summary judgment on the basis of qualified immunity, Mr. Sanchez argued that the Manual gave him an objectively reasonable basis to believe Mr. Archer did not have a protected property interest in his employment. In a supplemental affidavit, Mr. Sanchez averred he personally showed Mr. Archer the section of the Manual when they met, and he believed Section I.B.8 supported his decision. Mr. Sanchez stated that the phrase, "Regulations of the University Board of Regents," appearing in Mr. Archer's contract, referenced the Manual. A copy of the Manual was attached to the motion.

Responding, Mr. Archer contended his contract was for a definite term which, by its own terms and under New Mexico law, could only be terminated for cause. Therefore, because he had a protected property interest in his employment, Mr. Archer could not be fired without notice of the basis of his termination and an opportunity for a hearing. By supplemental affidavit, Mr. Archer stated he had never been told about or previously shown the Manual until Mr. Sanchez met with him. Mr. Archer stated that he had read the *Regents' Policy Manual* and the *Faculty Handbook*, which did not authorize the president's conduct, and received the Manual only after the University librarian offered it to him as the only other document he could find on University employment practices.[3]

Mr. Archer submitted two additional affidavits. In one, John Aragon, who had served as president of the University for ten years before Mr. Sanchez was appointed to the position, stated that while the contractual rights of faculty were delineated and other personnel "had refuge under

the personnel handbook ... [i]n those cases, and I don't recall any specific one, where the employee merely served from contract to contract for a specific term, he was afforded the right to a reason and a hearing if a termination was made during the contractual period." Mr. Aragon stated that the Manual language, "serve at the pleasure of the President," did not support "the right to terminate such employees without notice or a right to a hearing, if the employee had a contract for a specific term." In the second affidavit, Leo Moya, Director of Personnel at the University when Mr. Sanchez was appointed president, stated that Mr. Sanchez had asked him about the proper procedure to follow to terminate certain employees with written employment contracts for a specific term like that of Mr. Archer. Mr. Moya averred he told Mr. Sanchez that the "personnel manuel [sic] did not provide a procedure to follow for persons with a contract for a term, except such procedures as might be contained in the contract." He further stated he advised Mr. Sanchez in order to terminate an individual with such a contract before the end of the term, notice of intent to terminate and the reason for termination had to be provided.[4]

Mr. Archer also submitted the "Foreword" to the *Regents' Policy Manual* [Exhibit D] which provides, in part:

The *Manual* will serve as a source of information for all concerned with the basic policies and procedures followed by the Board of Regents in exercising its authority and discharging its responsibilities for the purpose of fulfilling the mission of the University.

. . . .

---

from person to person as he so determines is in the best interest of the University.

2. The district court granted defendants' motion to dismiss the state and federal claims based on Eleventh Amendment immunity to suit. Both parties to this appeal then moved for partial reconsideration of their motions. However, plaintiff has not appealed the denial of his motion.

3. Mr. Archer stated he met with Mr. Sanchez and disagreed the provision transformed his position into that of an employee at will. Mr. Sanchez then told Mr. Archer to dispute the decision in court.

4. Mr. Moya added that three individuals the president wanted to terminate were then given notice that their contracts would not be renewed but worked until the end of their contract terms.

This *Regents' Policy Manual,* as adopted and as amended from time to time, is the basic document governing the University community. Authority not expressly, or by necessary implication, delegated by the *Manual* is reserved to the Regents.

In its order denying the motion for partial reconsideration, the district court laid out the analysis established by *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); and *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Recognizing that under *Roth* plaintiff must first establish he has a property interest in his employment, the district court looked to state law to characterize this particular entitlement, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and concluded that New Mexico law requires good cause to terminate an employment contract for a definite term unless the contract includes an alternative method. *See Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 749 P.2d 1105, *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988); *Bottijliso v. Hutchison Fruit Co.,* 96 N.M. 789, 635 P.2d 992 (Ct.App.), *cert. denied,* 97 N.M. 483, 641 P.2d 514 (1981). The district court was unable to conclude the provision in the Manual represented such an implied alteration. In fact, the court noted the only evidence in support of that conclusion was the printed statement on the cover of the Manual[5] and Mr. Sanchez's affidavit stating he believed the Manual is a regulation of the Board of Regents. Moreover, the court found the language in Section I.B.8,[6] "tends to indicate that the Personnel Manual is merely giving the President of the University the power to enter into, and to negotiate the terms of, employment contracts for the University." The court concluded these factual issues precluded sum-

mary judgment on the issue of plaintiff's property right in continued employment. Given this threshold analysis, the court decided the statements of Messrs. Aragon and Moya, suggesting that Mr. Sanchez's actions were not reasonable in light of the facts and applicable law, were sufficient under *Anderson* to preclude summary judgment on the question of qualified immunity.

Mr. Sanchez now urges the district court correctly analyzed the facts but arrived at the wrong conclusion, avoiding resolution of the legal question by framing it solely as a factual question. In essence, Mr. Sanchez contends, the very existence of a factual question about plaintiff's contract and status immunizes the conduct. In response, Mr. Archer urges the district court correctly distinguished the difference between uncertainty about the law giving plaintiff the right to due process and uncertainty about the facts surrounding the denial. While uncertainty in the former may serve as the basis for granting qualified immunity, it does not automatically produce the same result in the latter, Mr. Archer maintains.

Indeed, the uncertainty present in this case is not over Mr. Archer's right to a hearing, but rather over whether his contract is governed by the Manual. Mr. Sanchez would have us avoid determination of that issue by granting him qualified immunity, arguing, in effect, that the lack of clarity over whether the Manual applies proves Mr. Archer did not have a clearly established right to notice and a hearing. That argument harnesses the cart to the horse.

Our review of the district court's order denying summary judgment on the basis of qualified immunity is plenary. Like the district court, we must look at the facts which form the predicate for the legal con-

---

**5.** The cover of the Manual reads, "Secretarial, Clerical & Physical Plant Personnel Policy & Procedures Manual, Adopted by The Board of Regents, New Mexico Highlands University, November 1982."

**6.** The court specifically focused on the statement, "shall serve at the pleasure of the Presi-

dent," followed by "[Executive, Administrative and Faculty personnel] shall be subject to such terms and conditions of employment as [the President] so establishes, said terms and conditions may differ from person to person as he so determines is in the best interest of the University."

clusion that summary judgment granting qualified immunity is unavailable. The blueprint for our analysis was set forth in *Coen v. Runner*, 854 F.2d 374, 377 (10th Cir.1988) (citations omitted):

> Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity.

Mr. Archer established that his employment contract for a specific term is recognized under New Mexico law as a property right which cannot be taken away without some procedural protection reflecting fundamental fairness. *See Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 777 P.2d 371 (N.M.1989). *Anderson* then guides our inquiry into whether qualified immunity shields Mr. Sanchez from "civil damages liability as long as [his] actions could reasonably have been thought consistent with the rights they are alleged to have violated." 483 U.S. at 638, 107 S.Ct. at 3038.

*Anderson* attempted to explain what the Court meant by "clearly established" as used in *Harlow*, 457 U.S. at 800, 102 S.Ct. at 2727, recognizing that artful pleading of highly abstract rights "would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. Using, for example, a possible due process violation, the Court observed that at the most general level "any action that violates that Clause (no

matter how unclear it may be that the particular action is a violation) violates a clearly established right." *Id.* In order to make "clearly established law" meaningful with regard to the "objective legal reasonableness," the court set forth a more particularized inquiry:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted).

■ While the court must decide whether the law in question was clearly established, *Meade v. Grubbs*, 841 F.2d 1512, 1533 (10th Cir.1988), the qualified immunity defense involves factual questions which become intertwined in the court's characterizing plaintiff's precise constitutional claim.[7]

> It is not enough that the court concludes that a violation *arguably* occurred. Rather, the court must be certain that if the facts alleged by plaintiff are true, notwithstanding any credibility disputes with defendants, *then* a violation has clearly occurred. The purpose of requiring careful characterization of plaintiff's claim at the outset of a qualified immunity analysis is to effectuate the goal of that defense, which is immunity from suit, not just from trial.

*Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir.1989) (citations omitted).

■ Against this background, we review plaintiff's claim. Plaintiff contended he had a one-year employment contract which could not be terminated without his being given a reason for the discharge and the opportunity for a hearing. Plaintiff particularized this constitutional right not only

---

7. Nevertheless, we agree the court must resolve the legal question and cannot avoid it "by framing it as a factual issue." *Pueblo Neighborhood*

*Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988).

by relying on New Mexico law but also by offering evidence of how former members of the administration of the University acted with regard to that known right. Against these facts, defendant stated that as a reasonable official his conduct did not violate that right because he relied on the Manual which, he believed, altered the right. Surely the questions raised about the provision in the Manual help to define the precise constitutional claim at issue. Thus, given the factual dispute about the meaning and relevance of the Manual, we cannot say "in the light of preexisting law the unlawfulness must be apparent." *Anderson*, 107 S.Ct. at 3039. Nor can we say the converse. However, we can begin to particularize the right at issue to decide whether plaintiff's termination, without any notice or hearing, violates that particular right.

Indeed, in our effort to particularize the right in question, it is helpful to recognize its boundaries. The Court has stated:

> We have made clear in *Roth*, that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709).[8]

If the Manual, in fact, particularizes the clearly established right in this case, that factor alone does not complete the equation.[9] Whether the defendant "reasonably should have understood that [his] specific actions violated that right," *Newman v. Commonwealth of Mass.*, 884 F.2d 19, 23 (1st Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990), is an issue to be resolved.

Contrarily, of course, if the district court determines Mr. Archer's contract includes the Manual, another result obtains. Yet, the resolution of neither contract theory would entitle Mr. Sanchez to qualified immunity.

If the district court concludes the contract does not subsume the Manual, Mr. Sanchez' claim to a summary right of dismissal evaporates. Yet, if the district court reaches the contrary conclusion, Mr. Archer's claim is subjected to a similar fate.

Under these circumstances, we conclude qualified immunity was properly denied, and the district court correctly left open further inquiry into the legal arguments over the scope of Mr. Archer's contract. Having reached this conclusion, however, we are not suggesting which of the competing theories is correct.

The district court properly left that inquiry open in denying defendant's motion for reconsideration of summary judgment. Mr. Archer has met his burden of showing factual disputes relevant to the claim of immunity precludes summary judgment.

AFFIRMED.

BALDOCK, Circuit Judge, dissenting.

"[Q]ualified immunity ... provides ample protection to all but the plainly incompetent

---

**8.** *Perry* involved a nontenured teacher, Mr. Sindermann, who had been employed by the college for four successive years under one-year term contracts until the Board of Regents refused to renew his contract allegedly because of his activity in challenging administration policy. Discussing the appropriate analysis of whether a property right exists, the Court observed:

> A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment un-

less sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in reemployment.

408 U.S. at 601, 92 S.Ct. at 2699–2700.

**9.** We note that the Manual, Section VII.E, "Termination of Employment," details the types of termination categories and methods of giving notice for clerical, secretarial and physical plant employees.

or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In defining this "ample protection," the Supreme Court has provided guidance for lower courts. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court directed the inquiry to "the objective reasonableness of an official's conduct, as measured by reference to clearly established law...." *Id.* at 818, 102 S.Ct. at 2738. For the law to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In this case, the contours of plaintiff's right are unclear under New Mexico law. Unclear is what effect the *Secretarial, Clerical and Physical Plant Personnel Policy & Procedures Manual* (manual), if incorporated, would have on the plaintiff's employment contract. The manual contains two pertinent provisions: (1) that it has been adopted by the Board of Regents of the University; and (2) that administrative personnel serve "at the pleasure of the President of the University." If the manual is indeed a regulation of the Board of Regents and hence a part of plaintiff's contract, New Mexico law does not provide a clear answer as to the nature of the contract. New Mexico courts, at the time defendant fired plaintiff, had not decided whether a "pleasure of the employer" contract was an "at will" contract or an entitlement subject to due process requirements; however, New Mexico courts had determined that "[w]here a contract provides for a manner by which termination can be effected, those provisions must ordinarily be enforced as written." *Smith v. Price's Creameries,* 98 N.M. 541, 650 P.2d 825, 830 (1982). The phrase, "at the pleasure of the President of the University," could be construed as "a manner by which termination can be effected...." *Id.* If the phrase were to be construed in this manner, plaintiff's employment contract would be considered an "at will" employment contract, not an entitlement subject

to due process concerns. Faced with this ambiguity in the relevant law, "officers of reasonable competence could disagree on this issue" of whether defendant's summary firing of plaintiff was illegal. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Therefore, qualified immunity should be granted.

This court, however, refuses to grant qualified immunity because of the "factual dispute" over whether the manual applies to plaintiff's contract—this, in spite of the explicit provision in the plaintiff's contract incorporating the "Regulations" of the University Board of Regents. Ct. Op. at 1531. The court states:

> given the factual dispute about the meaning and relevance of the Manual, *we cannot say "in the light of preexisting law the unlawfulness must be apparent." Anderson,* 107 S.Ct. at 3039. *Nor can we say the converse.* However, we can begin to particularize the right at issue to decide whether plaintiff's termination, without any notice or hearing, violates that particular right.

*Id.* (emphasis supplied). This passage reflects an uncertainty as to the proper legal interpretation of plaintiff's contract; such uncertainty requires the court to grant qualified immunity, for it is the plaintiff's burden on summary judgment to show that defendant's alleged conduct violated a "clearly established" right. *See Coen v. Runner,* 854 F.2d 374, 377 (10th Cir.1988). If the existence of a legal right is uncertain it is not "clearly established." The court avoids the problem, stating that plaintiff has met his burden because he "particularized this constitutional right not only by relying on New Mexico law but also by offering evidence of how former members of the administration of the University acted with regard to that known right." Ct.Op. at 1530–31. This, however, is precisely the type of fact-based inquiry that the Tenth Circuit has declared illegitimate. *See Pueblo Neighborhood Health Center, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988) ("The question for the trial court to resolve is a legal one; the court cannot avoid the question by framing it as a factu-

al issue."). The evidence plaintiff would offer simply is not *material* to the qualified immunity inquiry. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (only *material* factual disputes preclude summary judgment).

In this case we are called upon to make a legal determination, given the manual and the contract's explicit incorporation of the Board of Regents' "Regulations," of whether "officers of reasonable competence could disagree on" the legality of summarily firing plaintiff. *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096. Essentially, the dispute is over the interpretation of the word "Regulations." The plaintiff contends that the regulations do not encompass the manual, and the defendant contends that they do. When considering that the manual explicitly states that it has been adopted by the Board of Regents, one would be hardpressed to conclude that defendant was unreasonable in interpreting the word regulations to include the manual. Stated another way, it was not "apparent" to defendant that his conduct was illegal. *See Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 ("in the light of preexisting law the unlawfulness must be apparent"). Because of this ambiguity over the nature of plaintiff's contract rights, defendant should be granted qualified immunity.[1] I respectfully dissent.

---

1. This is not to say that a court may grant summary judgment to a defendant because of qualified immunity when there are material facts in dispute. A disputed fact that would preclude summary judgment would be one which relates to the alleged conduct or motive. *See, e.g., Pueblo Neighborhood Health Center, Inc.,* 847 F.2d at 647–50 (dispute over whether defendants were motivated by racial animus in conspiring to interfere with plaintiffs' free speech rights); *Garrett v. Rader,* 831 F.2d 202 (10th Cir.1987) (dispute over whether defendant committed the alleged act that violated clearly established law). In this case, defendant does not dispute the allegation that plaintiff was fired without notice or hearing. Rather, he disputes plaintiff's legal interpretation of the employment contract. This legal dispute casts considerable doubt on the right plaintiff seeks to litigate. Because that right is uncertain, it is not "clearly established," and qualified immunity is appropriate.