1999-NMCA-073

983 P.2d 427

**Fletcher COCKRELL, Plaintiff–Appellee,**

v.

**The BOARD OF REGENTS OF NEW MEXICO STATE UNIVERSITY and Jim Paul, Defendants–Appellants.**

**No. 19,417.**

Court of Appeals of New Mexico.

May 7, 1999.

Matthew P. Holt, Holt & Babington, P.C., Las Cruces, for Appellee.

Thomas A. Sandenaw, Jr., Leonard J. Piazza, Law Office of T.A. Sandenaw, Las Cruces, Clifford K. Atkinson, Atkinson & Thal, P.C., Albuquerque, Kenneth L. Harrigan, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellants.

## OPINION

BOSSON, Judge.

{1} In this qualified immunity case, Plaintiff, Fletcher Cockrell, sued New Mexico State University (NMSU) and its Athletic Director, Jim Paul, alleging, among other claims, a breach of implied contract and a deprivation of a property interest without due process of law that arose when Paul summarily terminated Cockrell's employment as assistant basketball coach at NMSU. Paul appeals a district court order denying his motion for summary judgment on the ground of qualified immunity with respect to the due process claim. We determine that Cockrell's alleged property interest in continued employment under NMSU's Personnel and Benefits Policy Manual (the Manual) was not clearly established at the time of his discharge, and therefore, Paul was entitled to summary judgment based on qualified immunity. In light of this decision, we need not decide any other issue appealed to us. We reverse and remand for entry of summary judgment in favor of Paul on Cockrell's due process claim and for further proceedings on Cockrell's remaining claims.

## APPELLATE JURISDICTION

{2} After the district court denied his motion for summary judgment on qualified immunity, Paul filed a petition for writ of error and stay of proceedings in this Court which we granted and assigned the case to the general calendar. *See Carrillo v. Rostro,* 114 N.M. 607, 614–19, 845 P.2d 130, 137–42 (1992) (explaining the use of a writ of error as the proper procedure for reviewing collateral orders such as orders denying qualified immunity); *see also Knippel v. Northern Communications, Inc.,* 97 N.M. 401, 402, 640 P.2d 507, 508 (Ct.App.1982) (noting that motions to dismiss are treated as motions for summary judgment when matters outside the pleadings are considered). Because the district court denied Paul qualified immunity as a matter of law, the order is immediately reviewable. *See Carrillo* 114 N.M. at 614, 845 P.2d at 137; *see also Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that a district court order denying a motion for summary judgment on the ground of qualified immunity was immediately appealable under federal law when the issue was whether certain given facts showed a violation of clearly established law); *cf. Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding that an order denying a motion for summary judgment on qualified immunity was not subject to immediate appellate review under federal law when the motion was denied because of the existence of genuine issues of material fact).

## BACKGROUND

{3} Cockrell was employed by NMSU as an assistant basketball coach for approximately 16 months, starting in June 1996 until he was terminated in October 1997. Cockrell did not have an express, written contract of employment but instead claims certain rights as an employee under the Manual. The key dispute under the Manual is whether Cockrell was still a probationary employee at the time of his termination. Probationary employees have no expectancy of continued employment and may be terminated without cause and without procedural protections such as notice and a hearing. Non-probationary employees, on the other hand, do have such an expectancy in that they can only be discharged for good cause and by way of due process grievance procedures. There is no dispute that if Cockrell was still a probationary employee at the time of his termination, then his discharge satisfied the Manual. However, if by then, he was more than a mere probationary employee, then it is equally settled that he did not receive the protections owed him under the Manual. More importantly, for purposes of this appeal, as a non-probationary employee Cockrell would have an expectancy of continued employment which cannot be eliminated arbi-

trarily without due process of law. *See generally Lovato v. City of Albuquerque*, 106 N.M. 287, 289, 742 P.2d 499, 501 (1987) (recognizing, under federal law, a constitutionally protected property interest in the right to continued employment).

{4} The contents of the Manual are not in dispute; only their interpretation is in doubt. We will discuss those differences in more detail later in this opinion. The underlying facts are also fairly well settled. Cockrell was initially hired in June 1996 under non-competitive, emergency procedures. A year later, as required by the Manual, NMSU advertised Cockrell's position, Cockrell re-applied, and he was rehired in the same position. Although his actual job seems to have remained the same, his employment status officially changed June 1, 1997, after his rehire, when he was no longer an emergency employee. Cockrell argues that his first year as an emergency hire constituted his probationary period. Upon rehire in June 1997, Cockrell maintains he was a non-probationary employee and could only be discharged for cause. On the other hand, Paul takes the position that Cockrell did not become a probationary employee until after he was rehired in June 1997 as a non-emergency, full-time, regular employee. As such, Cockrell would not have evolved into a regular, non-probationary employee until he had completed working one year from his June 1997 reemployment. This difference in interpreting the Manual frames the critical dispute between the parties.

{5} In response to Cockrell's civil complaint for damages against him individually under 42 U.S.C. § 1983, Paul filed a motion to dismiss the due process claim on the ground of qualified immunity. Attached to the memorandum in support of this motion was an affidavit of the Director of Personnel, which in turn attached as exhibits portions of the Manual and various memos, completed personnel forms, and portions of Cockrell's file, all relating to his employment with NMSU.

{6} Cockrell responded to the motion to dismiss by filing a memorandum in opposition with affidavits. Cockrell's affidavit attached as exhibits the staffing authorization form for the position of assistant basketball coach dated June 5, 1996, the personnel transaction form showing a hire date of June 28, 1996, and various other personnel forms regarding insurance and other employee benefits as well as portions of the personnel manual. Cockrell also attached the affidavits of Al Gonzales, Thomas Vincent, and Dorothy Peters, each of whom had substantial experience in personnel matters. These affidavits each expressed the opinion that it was objectively unreasonable to conclude that Cockrell was a mere probationary employee in October 1997, essentially because, in their opinion, the first year of emergency status constituted the one-year probationary period.

{7} Paul then filed a motion to strike the affidavits of Gonzales, Vincent, and Peters, and to strike portions of Cockrell's affidavit. The district court denied the motion to strike the affidavits as moot because it determined Paul "is not entitled to the defense of qualified immunity as a question of law, and [the court] did not rely on these Affidavits in making its decision." Paul has obtained this writ of error to appeal that decision.

## DISCUSSION

### The Qualified Immunity Defense and Summary Judgment

{8} Government officials performing discretionary functions are entitled to qualified immunity from suit under § 1983 as long as "their conduct [did] not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *accord Romero v. Sanchez*, 119 N.M. 690, 692, 895 P.2d 212, 214 (1995); *Kennedy v. Dexter Consol. Schs.*, 1998-NMCA-051, ¶ 32, 124 N.M. 764, 955 P.2d 693, *cert. granted* (S.Ct. Apr. 2, 1998) (No. 24,988); *Yount v. Millington*, 117 N.M. 95, 98, 869 P.2d 283, 286 (Ct.App.1993). The immunity obtains unless it can be shown as a matter of clearly established law that an objectively reasonable official would have known that rights were being violated. Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct.

1092, 89 L.Ed.2d 271 (1986). Put another way, qualified immunity is "the usual rule," such that "only in exceptional cases" will governmental actors have no immunity from § 1983 claims brought against them for money damages in their individual capacities. *Lassiter v. Alabama A & M Univ. Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994). The New Mexico Supreme Court has noted that qualified immunity "is an accommodation by the courts to the 'conflicting concerns' of government officials seeking freedom from personal monetary liability and harassing litigation and injured persons seeking redress for the abuse of official power." *Oldfield v. Benavidez,* 116 N.M. 785, 789, 867 P.2d 1167, 1171 (1994) (citation omitted).

{9} Once qualified immunity is properly raised in a motion for summary judgment, the court conducts a two-part test.

> First, a court must look at the undisputed facts and those facts adduced by the party opposing summary judgment to see if there is any evidentiary support for finding a possible violation of law. Second, if the law may have been violated, a court must ask if that law was clearly established at the time of the alleged violation.

*Romero,* 119 N.M. at 692, 895 P.2d at 214. "On a summary judgment motion the issue is an 'essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.'" *Id.* (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806). An official is entitled to qualified immunity on a motion for summary judgment if the right allegedly violated was not so clearly established that an objectively reasonable, similarly situated official would have known that the challenged actions would violate the Constitution.

■ {10} The question to be decided, then, is whether Paul's actions in terminating Cockrell's employment summarily, without a hearing and without any good cause shown, violated clearly established law of which an objectively reasonable official in Paul's position would have been aware. Initially, Cockrell argues that only the overall legal standard need be clearly established and not the application of that law to a particular set of facts. Cockrell would have this Court focus

on what we acknowledge is a clearly established principle of due process of law, that a protected public employee, one with an enforceable right or expectancy to continued employment under state law, cannot be terminated without notice, an opportunity to be heard, and a showing of cause. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Lovato,* 106 N.M. at 289–90, 742 P.2d at 501–02.

■ {11} On the other hand, Paul argues that Cockrell must do more than invoke the due process clause; he must make a particularized showing under the facts of this case that the NMSU personnel rules created a clearly established right to his continued employment, such that Paul, or an objectively reasonable official similarly situated, would have known he could not terminate Cockrell without affording him procedural due process and without a finding of cause. Based on our review of federal law and New Mexico precedent, we agree with Paul that the "general [due process] proposition is, in reality, a useless bit of abstract information, giving no practical instruction to defendants at the time and, in turn, having almost nothing to do with whether qualified immunity would protect defendants' acts." *Lassiter,* 28 F.3d at 1151. Consequently, Cockrell is obliged to demonstrate that his particular right to continued employment under the facts of this case was clearly established under New Mexico law as of the date of discharge in October 1997. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Oldfield,* 116 N.M. at 790, 867 P.2d at 1172 (discussing the need for a particularized showing that a generally accepted constitutional proposition clearly applies to the plaintiff's situation such that a reasonable official would have known his actions would violate plaintiff's rights).

{12} We are guided by closely analogous New Mexico case law. In *Silva v. Town of Springer,* 1996–NMCA–022, ¶ 2, 121 N.M. 428, 912 P.2d 304, two former town employees sued the Town of Springer and three town trustees, individually, who voted not to

re-employ them. *See id.* ¶ 4. The trustees had discharged these employees without providing them any of the procedural protections set forth in the town personnel merit ordinance. *See id.* ¶ 3. Like Cockrell in the case before us, the employees in *Silva* sued under theories of implied contract and deprivation of due process. *See id.* ¶ 4. The trustees asserted qualified immunity to the constitutional claims which the district court granted. *See id.* We affirmed, even though as a factual matter it was unclear whether the position held by one of the employees did or did not fall within the protection of the ordinance. *See id.* ¶ 24. We granted qualified immunity because the employee "ha[d] not shown that his rights under the personnel merit ordinance, if he has any, were clearly established law at the time of his discharge such that any reasonable person in [the trustees'] position would have known of it." *Id.* ¶ 24.

{13}   In a similar case, *Carrillo,* 114 N.M. at 610, 845 P.2d at 133, a former elementary school principal sued members of the school board under § 1983 for refusing to renew her contract without affording her a hearing. Our Supreme Court recognized the defense of qualified immunity with respect to the due process claim, which, not unlike Cockrell's, depended upon establishing an implied contractual expectancy in continued employment. *See Carrillo,* 114 N.M. at 622–23, 845 P.2d at 145–46. Without prejudging the merits of the school principal's claim to an implied contract of employment (which, if established, would preclude removal without due process of law), the Supreme Court noted that the law as of the date of termination did not clearly establish such a right in the school principal, and therefore, the officials were entitled to their individual defense of qualified immunity from suit. *See id.*

{14}   As these New Mexico cases suggest, contractual ambiguity regarding the existence of a legitimate expectancy in continued employment makes it difficult to demonstrate that a summary discharge violated clearly established legal rights in the discharged employee. While the procedural protections due an employee who has a legitimate expectancy of continued employment are not in

doubt, whether the employee has such an expectancy, as opposed to a mere at-will status, depends upon the details of his relationship with the employer. Thus, the clarity of that relationship, or the lack thereof, may well determine whether the employee's legal rights were clearly established at the time of discharge, however those rights ultimately may be defined at trial on a claim for breach of contract.

{15}   The same effects of contractual ambiguity in employment relationships are evident in federal opinions on point. *See, e.g., Derda v. City of Brighton, Colo.,* 53 F.3d 1162, 1166 (10th Cir.1995) (reversing the denial of a motion for summary judgment on qualified immunity when "[i]t is at least unclear whether [the state statute] is intended to confer on employees an interest in continued employment"); *Lassiter,* 28 F.3d at 1151 (ambiguity in contract and university employment policy manual justified qualified immunity); *Tubbesing v. Arnold,* 742 F.2d 401, 406 (8th Cir.1984) (stating that where the only dispute was the interpretation of a personnel manual "the fact that the application of the [manual] is disputed merely emphasizes that the law at the time of the conduct complained of was not clearly established"); *see also Hopkins v. Saunders,* 93 F.3d 522, 526 (8th Cir.1996) (qualified immunity granted in light of unsettled state law and unclear state agency personnel merit plan whether Division Director could only be discharged for cause); *Pace v. Moriarty,* 83 F.3d 261, 263 (8th Cir.1996) (due process claim depending on unsettled question of statutory construction whether employees of Secretary of State could be terminated without cause); *Mitchell v. Coffey County Hosp.,* 903 F.Supp. 1415, 1426 (D.Kan.1995) (qualified immunity granted when it was unclear whether maintenance supervisor had implied contract of employment); *Aspinwall v. Herrin,* 879 F.Supp. 1227, 1235 (S.D.Ga.1994) (unclear whether sheriff deputies fit within county personnel merit system and therefore sheriff entitled to qualified immunity from due process claim); *Jones v. City of Topeka,* 790 F.Supp. 256, 260 (D.Kan.1992) (qualified immunity granted on unclear question whether county personnel rules and regulations created implied contract of employment and constitutionally pro-

tected property interest even though court ruled for employee on ultimate contract claim). State court decisions reflect a similar thinking. *See, e.g., McKinsey v. Vernon*, 130 Idaho 354, 941 P.2d 326, 329 (1997); *Boreen v. Christensen*, 280 Mont. 378, 930 P.2d 67, 70–73 (1996); *Abell v.. Dewey*, 870 P.2d 363, 373 (Wyo.1994).

{16} Cockrell cites little contrary authority in his favor. Two such opinions differ significantly from the case before us, primarily because the employees already had a contract which established a presumptive right to continued employment, and also because there were real disputes about the facts in those cases, as opposed to the disputes in this case which are more about legal conclusions:

{17} In *Archer v. Sanchez*, 933 F.2d 1526, 1527 (10th Cir.1991), an administrative official at New Mexico Highlands University was terminated summarily despite his having a written contract for a fixed term, which under New Mexico law generally entitles an employee to a showing of cause at a hearing before discharge. The defendant university president invoked qualified immunity on the basis of a personnel manual for secretarial, clerical, and physical plant employees, describing certain other employees, including administrative employees, as serving " 'at the pleasure of the President.' " *Id.* at 1529 n. 6 (citation omitted). In response, the terminated official presented affidavits from a former president of the university and its personnel officer that in their experience, as a matter of past university practice, a person in the terminated official's position was afforded notice and a hearing before termination, and the language in the manual about serving "at the pleasure of the President" did not support any different conclusion. The terminated official also presented specific factual evidence that the personnel officer had so advised the defendant president before he took the action of discharge. *See id.* at 1528. Based on this evidence, the court denied the defendant president summary judgment on qualified immunity grounds, particularly because of the factual issues raised by the affidavits from former university officials. This evidence, if believed, would have resolved any contractual ambiguity in the terminated official's favor and established his right to continued employment. As we shall see, this kind of fact-specific evidence is absent from the present appeal. *Cf. Archer*, 933 F.2d at 1531–32 (Baldock J., dissenting) (noting that New Mexico law did not provide a clear answer to the nature of plaintiff's contract and that summary judgment based on qualified immunity should have been granted because of the ambiguity in the relevant law).

{18} In another of Cockrell's citations, *Calhoun v. Gaines*, 982 F.2d 1470, 1471–72 (10th Cir.1992), a ten-year college professor, who had already accepted an annual renewal of his contract, appealed his summary discharge and the district court's grant of summary judgment based on qualified immunity. The Tenth Circuit reversed in part, holding that the court should have assumed the facts as alleged by the professor, not the university, and on that basis any reasonable official would have known that the professor had a property right to continued employment under state law. *Id.* at 1475.

{19} Following *Silva* and the other cases cited herein, we consider whether Cockrell has made a particularized showing that in October 1997 he had a clearly established right to continued employment under NMSU's procedures, including the Manual.

### The Manual and Personnel Forms

{20} Contrary to the cases cited in his favor, Cockrell did not have a clearly established right to continued employment. He was hired under emergency procedures designed to fill an urgent need. Section 1:05 of the Manual provides for filling employment positions on an emergency basis for a period not to exceed one year. The position must be advertised during the year and the emergency hire is permitted to apply. The section further states, "An employee hired in an emergency hire status is eligible for all benefits afforded regular employees, and has no entitlement or expectation to continued employment during or beyond the appointment period." Section 5:07 of the Manual provides that "[p]robationary, temporary, occasional and emergency hire employees may

be terminated without cause," and reiterates that these employees have no expectation to continued employment during or beyond the probationary or appointment period. These sections suggest that one receiving an emergency appointment is not a regular employee and his or her status is distinct from probationary status. Certainly there is nothing in the Manual providing a probationary period for emergency hires or clearly indicating that the two overlap. Thus, Paul may reasonably have been entitled to believe that Cockrell's time as an emergency hire did not eliminate the need for a probationary status when he was rehired after a year.

{21} On the other hand, Section 3:01 provides that the one-year "probationary period is applicable to a new employee in any position to which appointed[,]" and states that the probationary period "shall be used as an adjustment period for new employees and supervisors." The initial probationary period applies to "[n]ew regular employees," and we note that some forms filled out by NMSU for Cockrell's emergency hire characterized him, at least for some purposes, as a "REGULAR STATUS" employee. The Manual at Section 5:07 defines "Regular Status" as an employment category "with no required termination date[,]" and it is factually unclear whether Cockrell's initial emergency hire had such a fixed, termination date from the very beginning, although as stated above, the Manual describes an emergency hire as being "for a period not to exceed 1 year." Like emergency hires, probationary employees "have no entitlement or expectation to continued employment during or beyond the probationary period." Under these portions of the Manual, one could reasonably argue that probationary and emergency appointment periods provide the same "adjustment period for new employees and supervisors," and accordingly they must overlap or they would provide redundant periods of "adjustment." Thus, Cockrell may have already satisfied his probationary period when he was "rehired" after a year on the job.

{22} Legal interpretation of whether Cockrell's probationary period began in June 1996, when he was initially hired, or in June 1997, when he was rehired, is uncertain at best and will likely not be decided until his implied contract claim proceeds to trial. We are unable to decide at this point, as a matter of clearly established law, whether probationary and emergency appointment periods overlap, as Cockrell argues, or whether emergency hires do not qualify as probationary employees, as Paul maintains. Individual provisions within the Manual are arguably inconsistent and contradictory, and in any case, do not lend themselves to a clear understanding of the kind which would alert an objectively reasonable official that he was infringing unconstitutionally upon Cockrell's rights of continued employment under the Manual. The same mixed message is apparent in the contents of different personnel forms that were used, first to hire Cockrell, and then to change his employment status at the end of a year. In short, Cockrell has failed to prove that his right to continued employment was clearly established under the Manual, such that an objectively reasonable person in Paul's position would have known that he was violating Cockrell's federally protected rights. *See Silva*, 1996–NMCA–022, ¶ 21, 121 N.M. 428, 912 P.2d 304; *Carrillo*, 114 N.M. at 612, 845 P.2d at 135; *see also Derda*, 53 F.3d at 1166; *Tubbesing*, 742 F.2d at 406.

{23} In making this determination, we are mindful of the affidavits submitted by Cockrell from Gonzales, Vincent, and Peters, each of whom had extensive experience in personnel issues. Each of these affidavits offers an opinion that NMSU's interpretation of the Manual was objectively unreasonable. We are not persuaded, however, that the affidavits prove that one interpretation of the Manual was clearly established as a matter of law. These opinions may create a factual conflict as to what someone experienced in personnel matters would have reasonably believed, but such a conflict in the abstract fails to prove a clearly established legal right in the particular.

{24} This is contrary to the situation in *Archer*, in which a factual question was created when the plaintiff presented evidence of a past practice at the university which favored the expectations of the plaintiff, and the defendant university president

was specifically told he had to give notice and a hearing before terminating a person in the plaintiff's position. Here, we are left primarily with differences of legal opinion about the proper interpretation of the Manual. Differences of legal opinion do not ordinarily create factual issues. *Cf. Phillips v. Allstate Ins. Co.*, 93 N.M. 648, 651, 603 P.2d 1105, 1108 (Ct.App.1979) (holding that arguments of counsel are not evidence on which to base the denial of summary judgment). As Cockrell's brief itself states, "Facts, not conclusions, are what should be before this Court." Thus, the affidavits in this case do not set forth facts which, if believed, would resolve the contractual ambiguity in favor of Cockrell's clearly established right to continued employment. Instead, the affidavits simply reinforce the conclusion that the law regarding Cockrell's employment status was not clearly established at the time of discharge.

{25} We also refer particularly to the Gonzales affidavit. As the former Athletic Director, who had developed the Manual, Gonzales was a signatory on behalf of NMSU in its decision to hire Cockrell. Gonzales states in his affidavit that it was his intent that Cockrell's one-year probation status begin. as of the date of the emergency hire in June 1996 and not later. Gonzales also indicates that he intentionally left blank the termination date on the emergency hire personnel form because it was "our intent" that Cockrell would remain as assistant coach even after the initial, emergency period. Cockrell's rehire after a year was described by Gonzales as a "mere formality." Gonzales does not indicate that any representations about such tacit intent were made directly to Cockrell. Gonzales' affidavit does not contain fact-specific evidence of past university practice, like that in *Archer*, or warnings to Paul that notice and a hearing should precede termination . for people like Cockrell. The affidavit brings little to bear on how Paul, Gonzales' successor, should have understood the terms of Cockrell's hire. Even Cockrell's affidavit depends on his own assumptions and speculation, based partially on what he was *not* told. ("At no point in time was I told that I would have to begin a probationary period as a result of the fact that the University had now gone through its

regular hiring process."). In short, regardless of whether the affidavits support Cockrell's claim of a breach of contract, they do not create a genuine issue of material fact sufficient to defeat summary judgment on the issue of qualified immunity. *Cf. Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding that in alleged police brutality case in which qualified immunity claim was dependent on core, fact-related disputes with respect to what occurred below, state was not entitled to appeal denial of summary judgment).

{26} Unlike the United States Supreme Court's opinion in *Johnson*, the underlying facts of Cockrell's hire are not in dispute, and all the relevant documents are before the court. The legal question of clearly established law does not have to await resolution of core, factual disputes as in a typical, "we didn't do it," or "I never said that" case. *See · id.* at 316, 115 S.Ct. 2151. Unlike *Johnson*, we can take the proffered facts in the light . most favorable to Cockrell and still conclude that it would not have been clear to an objectively reasonable Athletic Director that the Manual, including all the personnel forms and other documents, and even as embel- · lished by Gonzales, created in Cockrell a clearly established right to continued employment that would bring into play the protections of procedural due process.

{27} Finally, we reject Paul's request that we decide the merits of Cockrell's contractual arguments regarding the correct legal interpretation of the Manual and supporting documents. Appropriately, the focus of our inquiry in this appeal is limited to the question central to Paul's claim of qualified immunity, which is whether Cockrell has shown a violation of clearly established rights under the circumstances of this case. Our resolution of that question in Paul's favor "does *not* mean that plaintiff's state-law claim for breach of an implied contract of continued employment has been adjudicated against [him]." *Carrillo*, 114 N.M. at 612 n. 4; 845 P.2d at 135 n. 4. Cockrell's contract claim "is not foreclosed by anything in this opinion, and remains to be decided at trial in the district court." *Id.*

## CONCLUSION

{28} Because Cockrell has not shown that his claimed right to continued employment under the Manual was clearly established law at the time his employment was terminated, we reverse the order denying Paul summary judgment on the ground of qualified immunity. We remand for entry of summary judgment to that effect and for further proceedings on Cockrell's other claims.

{29} **IT IS SO ORDERED.**

PICKARD, C.J. and HARTZ, J., concur.