JOURNAL ENTRY AND OPINION
Plaintiff-appellant Jesse M. Coats (Coats) appeals from the granting of summary judgment in favor of defendants-appellees-movants Cuyahoga Metropolitan Housing Authority (CMHA), Sylvester Milton, James VanBergen, and Thomonica McBride.[1] For the reasons adduced below, we affirm.
A review of the record on appeal indicates that Coats was terminated in June of 1997 from his employment with CMHA because he violated a policy prohibiting firearms in the workplace on June 4, 1997. See CMHA Administrative Order 11, part II, section XIII (C-17), which details the policy prohibiting the possession, concealment, or display of weapons on workplace property.
The firearm was located within a small, synthetic material, zippered attache case which was allegedly placed by Coats on a chair next to his office desk, which was located within a cubicle work station which had six-foot partitions for walls. The case was brought to the office by Coats and, although he claimed that he did not know that the case contained a firearm and could not remember the contents of the case, he claimed that the case was fully zipped closed. See Coats deposition at 58. At some point, Coats left his cubicle. Coats received a telephone call at home from Mr. Milton, a human resources employee. As a result of this call, Coats met with Mr. Milton and Mr. VanBergen the next day, who told him that he was being terminated for having a firearm on CMHA property. Coats intimated that the firearm may have been planted in the case by other persons. See Coats deposition at 70-71.
Ms. McBride testified that on June 4, 1997, at 2:30 p.m., she was the only person in the office and she entered Coat's cubicle to answer an incoming telephone call which was directed to then-busy Ms. Watts' line (where McBride's desk was located), but had rolled over to Coats' line because it was the next available open line in the office. See McBride deposition at 40-44. McBride left her desk and went to Coats' cubicle to pick up the outside call when she accidentally kicked a trash can located in Coats' cubicle. With her leg, she attempted to steady the wobbling trash container. As she did so, the case fell over. She noticed that the case, which was allegedly on top of the trash can, was open and she could see the barrel of a firearm inside in plain view. She immediately notified CMHA authorities of the weapon.
Detective Michael Crawford of the CMHA police department arrived on the scene and found the case on top of a trash can in Coats' cubicle, near the desk. The zipper to the case was open. See Plaintiff's Exhibit D. Crawford then opened the case fully and found a .22-caliber handgun, Coats' checkbook, and a letter addressed to Coats at his home address. According to Crawford, the firearm was loaded, but had no round in the chamber. Id. The case and the firearm were confiscated.
Mr. VanBergen testified that he received a telephone call from McBride on June 4, 1997, who had complained to him that she had observed a firearm in Coats' cubicle. VanBergen instructed Crawford to go to Coats' cubicle and to secure the firearm if the firearm was in plain view. See VanBergen deposition at 10. Crawford returned to VanBergen's office that day with the loaded firearm and the case. Id. at 23. VanBergen then notified Mr. Milton and instructed him to prepare a notice of pretermination hearing and for termination. Id. VanBergen and Milton met with Coats on the morning of June 5, 1997, and Coats was terminated following that Loudermill hearing. Id. at 33-35, 65. Coats admitted to VanBergen that the firearm was his. Id. at 50-51, 53-54.
Coats filed suit on August 25, 1997, against the defendants herein alleging various constitutional deprivations and tort-based claims. See Cuyahoga County Common Pleas Court Case No. CV-339367. Subsequent to a hearing conducted on March 13, 1998, by the trial court on the constitutional issues presented by Coats and Coats' motions to suppress evidence and for protective order, the trial court determined on April 16, 1998, that there was no violation of any constitutional right by the search of Coats' work station and denied the motion to suppress the introduction of the firearm into evidence. See Order and Decision attached to the defendants' February 11, 2000 Motion for Summary Judgment, at Exhibit A. Thereafter, defendants filed a Motion for Summary Judgment on June 19, 1998. While this dispositive motion was pending, Coats voluntarily dismissed his action without prejudice.
Coats re-filed his action on June 28, 1999. See Cuyahoga County Common Pleas Court Case No. CV-386616. This re-filed action contained four counts: count one, that the search of his work space and seizure of the firearm violated Coats' 4th, 5th, 6th, and 14th Amendment rights and constituted an invasion of his privacy; count two, that CMHA was equitably and promissorily estopped from terminating him because he reasonably relied on a reasonable right of privacy in his work place; count three, violation of public policy tort in CMHA breaching its duty to protect the constitutional rights of its employees by using the product of an unlawful search and seizure as a basis for his termination; count four, intentional interference with Coats' employment contract by searching for, and seizing, the firearm and then using the firearm as a basis for his termination.
Subsequent to the completion of discovery by January 18, 2000, defendants filed a Motion for Summary Judgment on February 11, 2000. On February 23, 2000, Coats filed a Motion for Leave to File an Amended Complaint alleging age and sex discrimination claims. The defendants filed their brief in opposition on March 13, 2000 to the filing of an amended complaint. Coats, on March 14, 2000, filed his brief opposing summary judgment; the brief in opposition was supported solely by the eight-page affidavit of Coats. On April 19, 2000, the trial court granted summary judgment to the defendants and denied leave to file an amended complaint.[2] See Journal Vol. 2453, pages 833-845.
Coats filed his notice of appeal on May 12, 2000 from the April 19, 2000 final order. Seven assignments of error are presented for review. To better aid our review, the assignments will be addressed out of the order presented by appellant-Coats, and in some cases, will be discussed jointly.
Prior to addressing the assignments presented by appellant, we note the following standard of review relative to the granting of a motion for summary judgment:
 The Ohio Supreme Court has established that summary judgment under Civ.R. 56 is proper when:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330, 91 L. Ed. 2d 265, 106 S.Ct. 2548; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg 1992), 65 Ohio St.3d 356, 358-59, 604 N.E.2d 138.
 However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095; Celotex, supra, at 322. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." Chaney v. Clark Cty. Agricultural Soc. (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513.
Bisbee v. Cuyahoga Cty. Bd. of Elections (Mar. 1, 2001), Cuyahoga App. No. 77629, unreported, 2001 Ohio App. LEXIS 759, at 5-6.
We now turn our attention to the assignments presented.
The second and fourth assignments of error provide:
II
 THE TRIAL COURT ERRED IN NOT FINDING THE DEFENDANTS VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT PROHIBITING UNREASONABLE SEARCH AND SEIZURES.
IV
 THE TRIAL COURT ERRED IN NOT TAKING INTO CONSIDERATION THAT DEFENDANTS PERPETRATED AN UNREASONABLE INVASION OF PRIVACY AGAINST THE PLAINTIFF.
In these assignments, appellant argues that he had a reasonable expectation of privacy in his office and attache case and that the search of the case, which revealed the presence of a firearm therein, was therefore unreasonable and in violation of the 4th Amendment and his expectation of privacy. Appellant maintains that the evidence is conflicting as to whether the weapon was in plain view when it was first observed by McBride.
As correctly recognized by appellees, the Fourth Amendment provides government employees a reasonable expectation of privacy in their places of work. O'Connor v. Ortega (1987), 480 U.S. 709, 107 S.Ct. 1492,1496-1497, 94 L.Ed.2d 714, 1987 U.S. LEXIS 1507. The workplace includes those areas and items that are related to work and are generally within the employer's control. Id. 107 S.Ct. at 1496-1497. However, public employees expectations of privacy in their offices and desks may be reduced by virtue of actual office practices and procedures, or by legitimate regulation and the employee's expectation of privacy must be assessed in the context of the employment relation. Id.107 S.Ct. at 1497. Thus, whether a public employee has a reasonable expectation of privacy is to be addressed on a case-by-case basis and what is reasonable depends on the context within which a search takes place. Id.107 S.Ct. at 1498. Additionally,
 In the cases of searches conducted by a public employer, we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace.
Id. 107 S.Ct. at 1499.
In the present matter, the evidence indicates that Coats' cubicle was one of several cubicles in a larger office and was, in some situations, open to view from certain vantage points in the larger office. The cubicle was open to other employees with access to the cubicle for legitimate work-related reasons, such as, employees (in this case, McBride) picking up telephone calls throughout the office using, in this instance, Coats' cubicle telephone line. Accordingly, Coats did not have a reasonable expectation of privacy in the cubicle itself. Thus, the entry of the cubicle by McBride and CMHA police did not violate Coats'Fourth Amendment protections.
The next consideration is whether Coats had a reasonable expectation of privacy to the contents of his attache case. In O'Connor v. Ortega, supra, 480 U.S. at 719-726, the Court determined that a public employer need not require a probable cause requirement and the issuance of a warrant in order to intrude the privacy interests of public employees for non-investigatory work-related purposes, and for investigations of work-related misconduct. Instead, the standard for these types of intrusions, for both the inception and the scope of the intrusion, should be whether the intrusion is reasonable under all the circumstances. Id.480 U.S. at 725-726. The majority in O'Connor determined that the search of an employee's office would be justified at its inception when there are reasonable grounds to suspect that the search would turn up evidence that the employee is guilty of work-related misconduct. Id.480 U.S. at 726. In the present case, CMHA had a reasonable suspicion that Coats was in violation of its regulation precluding the possession of firearms on CMHA property, and initiated its search based solely on this reasonable suspicion of misconduct. Further, the scope of the search was limited by the CMHA police to the attache case in issue. Thus, the search of the attache case was reasonable under the circumstances and theFourth Amendment was not violated as a matter of law. Accordingly, the trial court did not err in granting summary judgment on the privacy-based claims and related suppression arguments.
The second and fourth assignments of error are overruled.
The third assignment of error provides:
III
 THE TRIAL COURT ERRED BECAUSE DEFENDANTS DID NOT GIVE PLAINTIFF A VALID PRE-DISCIPLINARY HEARING AS REQUIRED BY LOUDERMILL v. CLEVELAND BOARD OF EDUCATION, 721 F.2d 550 (6th CIR. 1983) AND NLRB v. WEINGARTEN, INC., 402 U.S. 251 (1975).
In this assignment appellant argues that, as a civil servant with a property interest in his continued employment at CMHA, his due process rights were violated when he did not receive a pre-disciplinary hearing which afforded him notice of the hearing and right to representation at that hearing. See Cleveland Bd. of Ed. v. Loudermill (1985), 470 U.S. 532,105 S.Ct. 1487, 84 L.Ed.2d 494, 1985 U.S. LEXIS 68.
As recognized by Loudermill, a pretermination hearing must be conducted before an employee, who has a constitutionally protected property interest in his employment, is terminated. The essential requirements of due process * * * are notice and an opportunity to respond. Id.470 U.S. at 546. This notice can be oral or written notice of the charges. Id. The following was stated with regard to a similar due process claim stemming from the termination of a deputy sheriff's employment:
 We first consider appellant's claim that he has been denied his procedural due process rights. The success of this claim is dependant upon the claimant demonstrating that he has been deprived of a protected property interest. See Frazier v. Garrison I.S.D. (C.A. 5 1993), 980 F.2d 1514, 1528; Story v. Green (C.A. 2 1992), 978 F.2d 60, 62; Strong v. Bd. of Edn. (C.A. 2 1990), 902 F.2d 208, 211; also see In re Appeal of Jefferson Twp. Bd. of Trustees (1992), 78 Ohio App.3d 493, 496, 605 N.E.2d 435. In the context of job loss by a public employee, the claimant must show that he had a property interest in continued employment. See Gorman v. Robinson (C.A. 7 1992), 977 F.2d 350, 356; Couch v. Wilkinson (C.A. 8 1991), 939 F.2d 673, 674; Farias v. Bexar County Bd. of Trustees (C.A. 5 1991), 962 F.2d 749, 751. This sort of property interest is not created by the United States Constitution. Bd. of Regents v. Roth (1972), 408 U.S. 564, 577. Rather, we must look to state law to determine whether an employee has a legitimate entitlement to continued employment. See Calhoun v. Gaines (C.A. 10 1992), 982 F.2d 1470, 1474; Carston v. Cook County (C.A. 7 1992), 962 F.2d 749, 751; Archer v. Sanchez (C.A. 10 1991), 933 F.2d 1526, 1529; Hearn v. Gainesville (C.A. 11 1982), 688 F.2d 1328, 1332.
Davis v. Jones (Sept. 28, 1993), Hocking App. No. 93 CA 06, unreported, 1993 Ohio App. LEXIS 5055, at 13-14.
The primary question is whether Coats had a property interest in continued employment. There is no question that Coats was a non-union employee and that CMHA is not part of the classified civil service of Ohio. See VanBergen deposition at 62-64; 1952 O.A.G. 1122; R.C. 124, et seq. Thus, as an unclassified civil servant, Coats had no property interest in continued employment. Yet, CMHA's disciplinary procedure mandated at Section III(A)(5), Suspension and Termination, see Plaintiff's Exhibit M, that:
 If the proposed discipline is a suspension or termination, the supervisor is to contact the human resources department. The human resources department will review the facts surrounding the proposed discipline with the supervisor and will prepare all documents necessary to administer the proposed discipline. The human resources department will also issue a notice to the employee indicating the proposed action and setting a pre-disciplinary meeting with the employee.
 At the pre-disciplinary meeting, the supervisor will advise the employee of the proposed action and the facts giving rise to the proposed action. The employee will be permitted to respond to the proposed discipline. * * *. (Italicization added.)
This disciplinary procedure is, for all intents and purposes, a Loudermill pretermination hearing afforded to CMHA employees being considered for suspension or termination.
In the present matter, Coats argues on appeal that written notice was lacking prior to the pretermination hearing[3], and that he was denied legal representation at the pretermination hearing. First, Loudermill does not mandate that such a notice be written, it can be issued in written or oral form. Likewise, the CMHA policy does not mandate the required notice be written, only that it be issued and gives the employee notice of the proposed action and the time of the hearing/meeting. Second, due process at a Loudermill pretermination hearing does not require a right of representation for the employee. Due process only requires notice of the charges and an opportunity by the employee to respond to the charges. Coats does not argue on appeal that he did not have the opportunity to respond to the charges at the pretermination hearing and that he had no right of representation at that stage.
The third assignment of error is overruled.
The fifth assignment of error provides:
V
 THE TRIAL COURT ERRED IN NOT FINDING THAT DEFENDANT DANIELLE WARE, DEFENDANT SYLVESTER MILTON AND DEFENDANT JAMES VAN BURGEN (sic) INTENTIONALLY INTERFERED WITH THE EMPLOYMENT CONTRACT OF PLAINTIFF.
As noted by the parties, the elements comprising the tort of intentional interference with contractual relationship are stated in Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, paragraph two of the syllabus:
 * * * (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.
Accord, Kenneth J. Majcen Assocs. v. The Phoenix Assocs., Inc. (Jan. 18, 2001), Cuyahoga App. No. 76454, unreported, 2001 Ohio App. LEXIS 140, at 17-18.
In the present case, there is no doubt that Milton and VanBergen were both acting within their capacity as supervisory employees of CMHA during their involvement with the firearm and the subsequent termination of Coats. Accordingly, their actions were entirely justified, see element 4 above, and no cause of action exists as to them relative to this tort claim.
As for McBride/Ware, there is no evidence demonstrating that when she entered Coats' cubicle, her purpose was to intentionally cause Coats to be terminated by finding a firearm in his possession. The unrebutted evidence is that her telephone was busy and she entered the cubicle for work-related purposes (answering the next incoming telephone call which had rolled over to Coats' telephone line). Thus, with regard to McBride, the elements 3 and 4 are lacking, and no cause of action exists as to her relative to this tort claim.
The fifth assignment of error is overruled.
The sixth assignment of error provides:
VI
 THE TRIAL COURT ERRED IN NOT FINDING THAT DEFENDANTS DISCHARGED PLAINTIFF IN VIOLATION OF PUBLIC POLICY AS SAID DISCHARGE WAS PREFACED UPON THE CONSTITUTIONAL VIOLATION, DEPRIVATION OF STATUTORY RIGHTS AND UNREASONABLE INVASION OF PRIVACY.
In this assignment, appellant argues that he made a claim for wrongful discharge in violation of public policy. He bases this claim on his belief that his termination was predicated on invasion of privacy and violations of his constitutional rights as identified in previous assignments herein. Having found these tort and constitutional claim assignments of error to be without merit, this assignment is similarly without merit.
The sixth assignment of error is overruled.
The seventh assignment of error provides:
VII
 THE TRIAL COURT ERRED IN NOT BARRING DEFENDANT'S (sic) UNDER THE DOCTRINE OF PROMISSORY ESTOPPEL FROM RAISING DEFENSE OF EMPLOYMENT AT WILL.
In his Complaint, appellant claimed that CMHA is equitably and promissorily estopped from terminating Plaintiff as he reasonably relief (sic) to his detriment on the right to privacy as to his personal property and his personal workspace of CMHA. Complaint at paragraph 25. The motion for summary judgment attacked the propriety of the claim as stated in the Complaint. In opposing summary judgment on this claim, appellant made no reference to his formal claim of having allegedly relied to his detriment on a right of privacy in his personal effects on CMHA property or otherwise counter the argument posed by the movants in support of summary judgment. Instead, Coats argued in opposition to summary judgment that he was assured that he would have a hearing after he was summarily terminated on June 4, 1997. Further, that, although promised, no post-termination hearing dealing with the merits of his termination was conducted. See Brief in Opposition to Summary Judgment filed March 14, 2000, at 21-22.
In this assignment, appellant apparently reiterates his argument presented in opposition to summary judgment (which was not responsive to the movants' argument concerning the promissory estoppel claim stated in Coats' pleading) and argues that CMHA was estopped from terminating him because they did not, as allegedly promised, conduct a hearing after June 4, 1997, where the merits of Coats' termination would be raised for the first time. Appellant, wilfully overlooking the Loudermill pretermination hearing conducted on June 5, 1997, maintains that he was never afforded a hearing on the merits of his termination and that, until a hearing is conducted, any termination is improper because CMHA promised him a hearing on the merits.[4] The record indicates otherwise. CMHA conducted a Loudermill hearing on June 5, 1997, at which time the charges were addressed and Coats was given the opportunity to respond to the charges. Following that hearing, the decision was made that day by Milton to terminate Coats' employment effective on June 4, 1997.
We conclude that summary judgment was proper on this claim for several reasons.
First, since the claim stated in the Complaint related to reliance on a promise of a right of privacy and the motion for summary judgment on this claim was not rebutted by Coats in opposing summary judgment, and we have previously determined that Coats did not have a reasonable expectation of privacy in his cubicle or the case, we conclude that the trial court did not err in granting summary judgment on the promissory estoppel claim as raised in the Complaint.
Second, Coats's claim, that he was promised a post-termination hearing on the merits of his termination, makes no sense and any reliance on such a promise, if it was in fact made in that form, is inherently unreasonable. Why would CMHA schedule a hearing on the merits of the termination after having terminated Coats? Clearly, Coats is confused as to the termination procedure and his procedural rights following that termination, or he mischaracterizes the post-termination grievance process as being equivalent to a hearing on the merits of the termination.[5] In either event, this promissory estoppel claim fails as a matter of law because reliance was not reasonable (if such a promise was made). Further, the claim fails as a matter of law because there is no demonstration of injury from having relied on the alleged promise. The evidence reflects that Coats had his termination hearing on June 5, 1997, where the merits of the termination were informally aired. Coats was advised of the opportunity for filing a grievance based on the termination and repeatedly canceled attempts at scheduling an administrative grievance hearing. See affidavits of Milton and VanBergen attached to the motion for summary judgment at Exhibits E and I; CMHA Administrative Order 11, Part II, Section XVII, Grievances. The post-termination administrative grievance process is not at issue in this appeal; rather, the issue is events leading up to the June 5, 1997, termination hearing and the resulting termination decision made effective June 4, 1997. We conclude that the trial court did not err in granting summary judgment on the claim of promissory estoppel.
The seventh assignment of error is overruled.
The first assignment of error provides:
I
 THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (sic) THERE EXISTS SEVERAL ISSUES OF LAW AND FACT UPON WHICH REASONABLE MINDS COULD DIFFER.
The argument supporting this assignment is nothing more than a lengthy compilation of the standard of review for a summary judgment ruling. Appellant, in arguing the stated assignment, neglects to give his reasons in support for his contentions with accompanying citations to the record. See App.R. 16(A)(7). Further, the propriety of granting summary judgment was part and parcel of assignments two through seven. This assignment is overruled as moot. App.R. 12(A)(1)(c).
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _______________________ SWEENEY, JAMES D., P.J.
[1] Mr. Milton was CMHA's Employee Relations Officer at the time of Coats' termination. Mr. VanBergen was CMHA's Director of Human Resources at the time of Coats' termination. Ms. McBride, aka Danielle Ware, was Coats' co-worker who observed the firearm at Coats' desk and notified CMHA police who then searched Coats' work station and seized the weapon. The depositions of Coats and the individual defendants were filed with the trial court in the re-filed action.
[2] The action was scheduled for a final pre-trial conference to be conducted on April 19, 2000, and trial to commence on May 11, 2000. See order of January 19, 2000, at Journal Vol. 2421, page 26.
[3] On appeal, Coats does not argue that oral notice by Milton, with an explanation of the charges and the proposed action, was not effected. Accordingly, this issue is abandoned by Coats.
[4] Pursuant to Stull v. Combustion Engineering, Inc. (1991),72 Ohio App.3d 553, 557, a claim based on promissory estoppel requires the following elements:
1. A promise whose terms are clear and unambiguous;
 2. Reliance by the party to whom the promise was made;
 3. The reliance must be reasonable and foreseeable; and,
 4. The party claiming estoppel must be injured by the reliance.
[5] It is the unsuccessful attempts to schedule the post-termination grievance hearing which appellant references as proof that a hearing on the merits of the termination was promised but had not been conducted. See appellant's brief at 34 (* * * correspondence throughout June, July, and August of 1997 and into 1998.).