FILED
United States Court of Appeals
Tenth Circuit

June 2, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IGNACIO MARTINEZ, SR.;
CHARLOTTE MARTINEZ,

     Plaintiffs - Appellees,

v.

PAUL MARES; ROBERT GONZALES,
in their individual capacities; THE CITY
OF RATON,

     Defendants - Appellants,

and

BLAIR JACKSON,

     Defendant.

No. 14-2153
(D.C. No. 1:14-CV-00041-WJ-KBM)
(D. New Mexico)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

The plaintiffs, Ignacio Martinez, Sr. and Charlotte Martinez, sued the

defendants, Officers Paul Mares, Robert Gonzales, Blair Jackson (the Officers), and

the City of Raton, New Mexico (collectively Defendants),[1] in the United States

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Mr. Jackson is a named defendant but not a party to this appeal.

District Court for the District of New Mexico. Mr. and Ms. Martinez alleged the Officers violated the couple's constitutional rights when they stopped and detained Mr. and Ms. Martinez's vehicle; ordered Mr. Martinez to exit the vehicle; and handcuffed, detained, and frisked Mr. Martinez for weapons. Defendants moved for summary judgment, claiming the Officers were entitled to qualified immunity, and the district court granted the motion in part and denied it in part. Defendants filed an interlocutory appeal challenging the portion of the district court's order denying their motion. We AFFIRM.

## I.    BACKGROUND

### A.  Factual Background[2]

This dispute arises out of a case of mistaken identity. The confusion began several weeks before the encounter between Mr. and Ms. Martinez and the Officers, when Mr. and Ms. Martinez's son, Ignacio Martinez, Jr., shot his son, Jason Martinez (Mr. and Ms. Martinez's grandson) in the face.[3] Jason survived the attack and obtained a restraining order against his father. A few weeks later, in the early afternoon of December 23, 2012, Mr. and Ms. Martinez drove in Mr. Martinez's car

---

[2] We state the facts as found by the district court because, as we explain in greater detail below, we have no jurisdiction to review them in this appeal. *See Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012).

[3] Because this case involves four individuals with the surname "Martinez," for clarity's sake we refer to Ignacio Martinez, Sr. as "Mr. Martinez"; to Charlotte Martinez as "Ms. Martinez"; to Ignacio Martinez, Jr. as "Ignacio Martinez, Jr."; and to Jason Martinez as "Jason." *See, e.g.*, *United States v. Kimler*, 335 F.3d 1132, 1134 n.1 (10th Cir. 2003) ("Because many of the people involved in this case share the same last name, they will, for the most part, be referred to by their first names throughout this opinion.").

to Jason's house to deliver a Christmas present. When Jason saw Mr. Martinez's car pull up outside his home, he remained inside and called for police assistance. He could not see who was driving the vehicle, but feared that his father, who was living with Mr. and Ms. Martinez at the time, had returned to "finish what he had started." Mr. and Ms. Martinez drove away when Jason did not come out of the house.

Officers Gonzalez, Jackson, and Mares responded to Jason's call. Jason, who was highly agitated, told them he was afraid of his father and had obtained a restraining order against him. The Officers told Jason to stay inside his house and call the police if there were any more problems. Officer Gonzales then left the scene, while Officers Jackson and Mares parked a short distance away to observe the residence. At approximately 1:30 p.m., Jason and his girlfriend got into their vehicle and tried to pull out of the driveway. As they did so, Mr. and Ms. Martinez again drove up to the house, pulled into the driveway blocking Jason's exit, and began to honk the car's horn. Officers Jackson and Mares called dispatch to report the return of the vehicle, thereby alerting Officer Gonzales of the situation, and then returned to the house.

Officer Mares and Jackson instructed Jason and his girlfriend to go back inside the home and ordered Mr. Martinez to exit the vehicle. Mr. Martinez initially protested, explaining that he was delivering a Christmas gift. Although Mr. Martinez had difficulty exiting his vehicle because he is elderly and disabled, he ultimately complied with the officers' direction. Officer Jackson then told Mr. Martinez to place his wallet on the roof of the vehicle. Mr. Martinez complained that the wallet was his

3

personal property, but complied. Officers Jackson and Mares then forcibly handcuffed Mr. Martinez, breaking his finger in the process. While this was taking place, Officer Gonzales, who had returned to the scene, informed Officer Mares that the person being handcuffed was Jason's grandfather, Ignacio Martinez, Sr., not Jason's father, Ignacio Martinez, Jr.—the person who had shot Jason in the face.

At this point, Officer Mares informed Mr. Martinez that he was not under arrest but would be detained until the Officers could sort matters out. Officer Mares then told Mr. Martinez he would be patted down for weapons. Mr. Martinez informed the officers that he had "a plastic stomach," by which he meant a colostomy bag. Nevertheless, Officer Jackson patted Mr. Martinez down for weapons, pushing his fingers into the area where the stoma was located. Finding no weapons, the Officers removed the handcuffs and released Mr. Martinez. Officer Mares then confirmed with Jason that Mr. Martinez was his grandfather, not his father.

As a result of the manner in which Officer Jackson conducted the pat-down, Mr. Martinez's colostomy bag was perforated, causing his stoma to bleed and causing fecal matter to leak onto his clothes. Mr. Martinez also required surgery to his finger as a result of the injury inflicted when Officers Jackson and Mares placed him in handcuffs.

### B. Procedural Background

Mr. and Ms. Martinez filed suit in the district court, claiming the investigatory stop and detention violated their rights to be free from unreasonable searches and seizures under the U.S. and New Mexico Constitutions. *See* U.S. Const. amend. IV;

4

N.M. Const. art. II, § 10. They asserted constitutional violations at each stage of the encounter: the initial stop; the order that Mr. Martinez exit his vehicle; the handcuffing of Mr. Martinez, the seizure of his wallet, the continued detention after learning he was not Ignacio Martinez, Jr.; and the pat-down for weapons. Mr. and Ms. Martinez also brought state tort claims alleging false imprisonment and battery.[4] They alleged damages for Mr. Martinez's physical injuries, emotional distress, and continued medical expenses caused by Defendants' conduct.

Defendants moved for partial summary judgment on Mr. and Ms. Martinez's constitutional and tort claims on the ground that the Officers were entitled to qualified immunity.[5] They argued the Officers acted reasonably throughout the encounter because when Mr. Martinez returned to Jason's house, the Officers had reason to believe he was Ignacio Martinez, Jr. acting in violation of the restraining order and that he was potentially armed and dangerous. Defendants justified the Officers' further detention of Mr. Martinez by alleging he aggressively blocked Jason's car in the driveway and was combative and resisted arrest after exiting the vehicle. Mr. and Ms. Martinez denied that Mr. Martinez drove aggressively or resisted arrest.

---

[4] Mr. and Ms. Martinez also brought claims alleging violations of the First Amendment of the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act. In addition, they claimed the City of Raton was liable for the Officers' actions. These claims are not at issue on appeal.

[5] A city cannot claim qualified immunity. *See Lynch v. Barrett*, 703 F.3d 1153, 1163 (10th Cir. 2013).

The district court granted Defendants' motion, in part. It agreed that initially stopping and requiring Mr. Martinez to exit his vehicle was justified because, at that time, the Officers reasonably believed Mr. Martinez was Jason's father. But the court held the Officers were not entitled to summary judgment on qualified immunity grounds for detaining and searching Mr. Martinez for weapons after they learned he was not Ignacio Martinez, Jr.[6] The court concluded that once the Officers knew Mr. Martinez was not Ignacio Martinez, Jr., the initial justification for the detention dissipated. Thereafter, the Officers needed independent justification for any continued intrusions on Mr. Martinez's liberty interests. The district court therefore denied Defendants' motion for summary judgment with respect to Mr. and Ms. Martinez's constitutional and tort claims based on the continued detention and pat-

---

[6] In addition, the district court held that the Officers were not entitled to qualified immunity for the initial decision to handcuff Mr. Martinez and seize his wallet. The district court concluded there were disputed facts regarding whether Mr. Martinez was combative or otherwise resisting arrest and whether the Officers should have done additional investigation to determine his identity prior to handcuffing him. *Compare Lundstrom v. Romero*, 616 F.3d 1108, 1123 (10th Cir. 2010) (holding that handcuffing a suspect was not reasonable where the suspect was cooperative and the officers failed to "undertake the most rudimentary investigation" to determine whether the suspect posed a threat), *with United States v. Shareef*, 100 F.3d 1491, 1504–05 (10th Cir. 1996) (concluding the use of handcuffs was reasonable where the officers were reasonably mistaken about the suspect's identity). On appeal, Defendants argue broadly that the entire encounter was reasonable, but they make no effort to separately analyze the propriety of the Officers' actions after the initial stop but prior to the time they learned Mr. Martinez was not Ignacio Martinez, Jr. We therefore do not consider this issue on appeal. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("[I]ssues will be deemed waived if they are not adequately briefed.") *as modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003); *Nat'l Commodity & Barter Assoc. v. Gibbs*, 886 F.2d 1240, 1244 (10th Cir. 1989) ("We are not required to manufacture a party's argument on appeal when it has failed in its burden to draw attention to the error below.").

down of Mr. Martinez. Defendants timely filed an interlocutory appeal of this decision.[7]

After Defendants filed their notice of appeal from the partial denial of summary judgment, Mr. and Ms. Martinez asked the district court to certify the appeal as frivolous so it could retain jurisdiction and proceed with the case. *See Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990) (recognizing that although a notice of appeal from a denial of qualified immunity will generally divest the district court of jurisdiction, "if the claim of immunity is a sham . . . the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks." (internal quotation marks omitted)). The district court granted the motion, concluding the appeal was frivolous because it challenged "the Court's decision, not because of the Court's application of the facts to the governing law (which *would* be a permissible basis for interlocutory appeal), but rather because [Defendants] do not agree with the way the Court resolved certain factual issues."[8]

---

[7] After the district court denied Defendants' motion for summary judgment on qualified immunity grounds but before Defendants appealed that decision, the district court granted Mr. and Ms. Martinez summary judgment on their claims that the continued detention and pat-down violated the Fourth Amendment of the U.S. Constitution. The parties agree the propriety of this order is not before us on appeal.

[8] Defendants claim in their opening brief that their appeal is not frivolous. If the district court's frivolousness certification were improper, Defendants might argue that any actions taken by the district court in the absence of a proper frivolousness certification should be vacated for lack of jurisdiction. *See Stewart v. Donges*, 915 F.2d 572, 579 (10th Cir. 1990) (vacating a district court's directed verdict in favor of the plaintiffs where the trial was conducted after the defendant appealed the court's denial of his motion for summary judgment, and holding that in the absence of a valid certification of frivolousness, the court was divested of jurisdiction at the time

As a result, the district court retained jurisdiction over the case, which is proceeding in the district court.[9]

## II. DISCUSSION

On appeal, Defendants challenge the district court's rejection of their claim that the Officers are entitled to qualified immunity for detaining and conducting a pat-down of Mr. Martinez after the Officers learned he was not Ignacio Martinez, Jr. For their part, Mr. and Ms. Martinez ask us to dismiss the appeal for lack of jurisdiction, or in the alternative, to affirm the district court's ruling. We begin by addressing our appellate jurisdiction and then consider the merits of Defendants' qualified immunity argument.

### A. Appellate Jurisdiction

We typically have jurisdiction only over "final decisions" by the district courts. 28 U.S.C. § 1291. "Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal." *Morris v. Noe*, 672 F.3d 1185, 1188

---

of the filing of the notice of appeal). But here, Defendants have not identified any action taken by the district court after their notice of appeal was filed. [Aplt. Br. at 29-30] Accordingly, we need not consider whether the district court properly retained jurisdiction.

[9] The fact that the district court certified the appeal as frivolous does not affect our jurisdiction. Instead, the case may proceed in both forums, with the district and appellate courts exercising concurrent jurisdiction. *See United States v. Hines*, 689 F.2d 934, 937 (10th Cir. 1982) ("[A]n appeal . . . does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusions by written findings. Rather, both the district court and court of appeals shall have jurisdiction to proceed. Thus the defendant is entitled ultimately to appellate review." (quoting *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980)).

8

(10th Cir. 2012) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011)). "But because qualified immunity provides a right to avoid trial, a district court's decision denying a government official qualified immunity is an immediately appealable final collateral order." *Id.* at 1188–89 (internal quotation marks omitted). Importantly, our review in such cases is limited: we cannot review the district court's determination "that factual issues genuinely in dispute preclude summary adjudication," or consider "whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Id.* at 1189 (internal quotation marks omitted). Instead, our jurisdiction is limited to review of "the district court's legal determination that certain alleged actions violate clearly established law." *Id.* (internal quotation marks omitted). Defendants may therefore assert on appeal that, accepting all of the facts in the light most favorable to the plaintiffs, the defendants did not violate the plaintiffs' clearly established constitutional rights. *Id.* at 1189; *see also Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (reversing decision granting summary judgment to officer on qualified immunity grounds where the court failed to adhere to the "axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" (internal quotation marks and brackets omitted)).

Mr. and Ms. Martinez ask us to dismiss the appeal because Defendants' briefs impermissibly challenge the district court's determination that genuine disputes of fact precluded summary judgment rather than disputing the legal question of whether,

9

if the facts are as Mr. and Ms. Martinez allege them to be, the Officers' conduct violated a clearly established constitutional right. Mr. and Ms. Martinez assert this divests us of appellate jurisdiction and request that we dismiss the appeal accordingly.

Mr. and Ms. Martinez are correct that Defendants' briefing to this court improperly challenges the district court's resolution of disputed facts and impermissibly states those facts in the light most favorable to Defendants. But Defendants also argue that they enjoy qualified immunity even under the facts alleged by Mr. and Ms. Martinez. Admittedly, this argument has evolved over the course of this appeal. But by the time of oral argument, Defendants had wisely abandoned any attempt to challenge the district court's factual findings and instead focused their challenge on the question of whether, even accepting the facts as alleged by Mr. and Ms. Martinez, the Officers had violated Mr. Martinez's clearly established constitutional rights. Resolution of this purely legal question falls squarely within our jurisdiction. *See Morris*, 672 F.3d at 1189; *see also Poolaw v. Marcantel*, 565 F.3d 721, 733 (10th Cir. 2009) ("Because the defendants assert that they are entitled to qualified immunity on the undisputed facts, this is a question of law.").

Therefore, we deny Mr. and Ms. Martinez's motion to dismiss and exercise our jurisdiction to consider this appeal. As we are required to do, we limit our inquiry to the legal question of whether, if the disputed facts are as Mr. and Ms. Martinez allege

10

them to be, the Officers violated Mr. Martinez's clearly established constitutional rights.

## B. Qualified Immunity

Having concluded we have jurisdiction over this appeal, we turn to the merits. In particular, we consider whether the district court properly determined the Officers were not entitled to summary judgment on qualified immunity grounds for the continued detention and pat-down of Mr. Martinez after they had actual knowledge he was not Ignacio Martinez, Jr.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cnty. of San Francisco v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted). "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must clear two hurdles to defeat the defendant's motion." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010). "The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Id.*; *see also Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) ("Our threshold inquiry in the qualified immunity analysis is whether, taking the [plaintiff's] allegations as true, [defendants] violated [his] Fourth Amendment right to be free from unreasonable seizures." (second alteration in original)). We address each of these prongs in turn, applying Mr. and Ms. Martinez's version of the facts.

11

*See Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015) (recognizing we have the freedom to decide which of the two prongs to examine first).

## 1.    Constitutional Violation

The constitutional right implicated here is Mr. Martinez's Fourth Amendment right to be free from unreasonable searches and seizures. *See* U.S. Const. amend IV. "In determining whether a seizure was constitutional, we balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Lundstrom*, 616 F.3d at 1119 (internal quotation marks omitted). Where, as here, a plaintiff has challenged an investigative detention and protective search, we conduct a two-step inquiry to assess the seizure's constitutionality. *See id.* at 1120; *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993). "First, we assess whether the detention was justified at its inception." *Lundstrom*, 616 F.3d at 1120. For an investigative detention to be justified at its inception, "the officer must have an articulable and reasonable suspicion that the person detained is engaged in criminal activity." *King*, 990 F.2d at 1557. Likewise, for a protective search to be "justified at its inception, the officer must not only harbor an articulable and reasonable suspicion that the person is armed and dangerous, the officer must also be entitled to make a forcible stop." *Id.* (internal quotation marks omitted); *see also Terry v. Ohio*, 392 U.S. 1, 27 (1968) (recognizing that a protective search is justified only where there is a reason to believe the suspect is both armed and dangerous); *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014) (same).

12

Second, we consider "whether the officer's action is reasonably related in scope to the circumstances [that first] justified the interference." *King*, 990 F.2d at 1557; *accord Terry*, 392 U.S. at 29; *see also Rodriguez v. United States*, ___ U.S. ___, 135 S. Ct. 1609, 1612 (2015) (recognizing that an initial seizure justified by a police-observed traffic violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission," even if the continued detention lasts only seven to eight minutes (internal quotation marks and brackets omitted)). For example, "A police officer may take such steps as are reasonably necessary to protect his safety and to maintain the status quo during a detention." *Lundstrom*, 616 F.3d at 1120. In determining whether such precautionary measures are reasonable, the standard is objective: "would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate." *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030–31 (10th Cir. 1997) (internal quotation marks and ellipses omitted).

We have also recognized some instances where a law enforcement officer may properly detain someone under the officer's exercise of "community caretaking functions," which are "wholly separate and apart from detecting, investigating, or acquiring evidence of a crime." *Lundstrom*, 616 F.3d at 1120. But "[l]ike an investigative detention, . . . a community caretaking detention must be based upon specific and articulable facts [that] reasonably warrant an intrusion into the individual's liberty." *Id.* (first alteration in original). Thus, a detention justified under an officer's community caretaking authority "must last no longer than is necessary to

13

effectuate its purpose, and its scope must be carefully tailored to its underlying justification." *Id.* at 1120–21.

It is with this framework in mind that we consider whether the investigative detention and pat-down of Mr. Martinez was constitutional. Mr. and Ms. Martinez do not challenge the district court's decision that the Officers are immune as a matter of law for the initial stop and order that Mr. Martinez exit his vehicle. But they claim any justification for the detention was dispelled when the Officers learned Mr. Martinez was not Ignacio Martinez, Jr. According to Mr. and Ms. Martinez, continuing to hold Mr. Martinez in handcuffs and patting him down after learning his identity constituted a clear Fourth Amendment violation for which the Officers are not immune.

In response, Defendants assert: (1) the continued detention and pat-down was justified by the Officers' lawful exercise of their community caretaking functions; and (2) the Officers had independent and reasonable suspicion to believe Mr. Martinez was armed and dangerous because he drove into the driveway, blocked Jason's exit, and honked the horn. Defendants argue that this behavior, combined with the family's history of violence against one another, made it reasonable to believe Mr. Martinez might be armed and dangerous. We are not persuaded these facts entitle the Officers to immunity as a matter of law.

Even giving the Officers some latitude under their community caretaking authority, the detention lasted longer than reasonably necessary to respond to the circumstances that justified the detention at its inception. Once the Officers learned

Mr. Martinez was not Ignacio Martinez, Jr., they were required to release him unless they had some independent basis to detain and search him. Mr. Martinez's actions in blocking Jason's car and honking his horn do not provide such justification because they do not give rise to a reasonable suspicion that Mr. Martinez was armed, dangerous, or had committed or was about to commit a crime.[10] The incident occurred at approximately 1:30 in the afternoon, Mr. Martinez is elderly and disabled, and he had complied with the Officers' instructions to exit the vehicle and place his wallet on the roof of the car.[11] And Mr. Martinez's familial relationship to Ignacio Martinez, Jr. does not impute Ignacio Martinez, Jr.'s dangerousness to Mr. Martinez. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 93 (1979) (recognizing that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" and holding that officers lacked reasonable suspicion to conduct a pat-down where there was no reason to believe the suspect himself was dangerous); *see also Poolaw v. Marcantel*, 565 F.3d 721, 730 (10th Cir. 2009) ("A familial relationship to someone suspected of criminal activity, without more, does not constitute probable cause to search or arrest.").

---

[10] We do not consider Defendants' argument, raised for the first time at oral argument, that Mr. Martinez's actions in blocking Jason's driveway constituted an assault and trespass. *See Frost v. Pryor*, 749 F.3d 1212, 1226 n.9 (10th Cir. 2014) ("[I]ssues may not be raised for the first time at oral argument." (internal quotation marks omitted)).

[11] Counsel for Defendants represented at oral argument that Jason told the Officers that Mr. Martinez had a gun. This representation finds no support in the record. Rather, the portion of the record cited by counsel reflects that Jason communicated with the Officers about Ignacio Martinez, Jr.'s guns and Jason's own guns.

For these reasons, we hold that under Mr. and Ms. Martinez's version of the facts, the continued detention and pat-down of Mr. Martinez after the Officers had actual knowledge he was not Ignacio Martinez, Jr., even if it was for mere minutes, constitutes a violation of Mr. Martinez's constitutional rights.

## 2.     Clearly Established

We now examine whether Mr. Martinez's constitutional right to be free from continued detention and frisk under these circumstances was clearly established at the time of the encounter. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotation marks omitted). Although there need not be a case precisely on point, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Quinn*, 780 F.3d at 1004-05 (internal quotation marks and brackets omitted); *accord Sheehan*, 135 S. Ct. at 1774 ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." (internal quotation marks and brackets omitted)).

Considering the facts here, we agree with the district court that the law was clearly established at the time of the incident. It has long been established that once a suspect is lawfully detained, an officer's further actions must be reasonably related in

16

scope to the circumstances initially justifying the seizure or otherwise reasonably necessary. *See Terry*, 392 U.S. at 29; *Lundstrom*, 616 F.3d at 1120–21. Furthermore, once those circumstances justifying the detention had been dispelled, the law was also clearly established that a law enforcement officer cannot continue to detain an individual, even if only for a few minutes. *See Florida v. Royer*, 460 U.S. 491, 498 (1983) (recognizing that a suspect "may not be detained *even momentarily* without reasonable, objective grounds for doing so" (emphasis added)); *see, e.g.*, *United States v. Lopez*, 443 F.3d 1280, 1284–86 (10th Cir. 2006) (concluding that the continued detention of a suspect's driver's license for five minutes, after the justification for seizing it was dispelled, was unconstitutional).

It was also clearly established at the time of the encounter that to conduct a lawful frisk, an officer must have reason to believe the suspect is armed and dangerous. *Terry*, 392 U.S. at 27. Thus, a reasonable officer would have understood that upon learning Mr. Martinez was not Ignacio Martinez, Jr., it would be unconstitutional to hold him in handcuffs and to conduct a pat-down for weapons unless there was a reason to believe Mr. Martinez himself was armed and dangerous. *See United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir. 1996) (holding that once officers learned a suspect was not the individual identified by an NCIC teletype as armed and dangerous, the continued use of handcuffs constituted an unlawful arrest).

Accordingly, the Officers are not entitled to summary judgment on qualified immunity grounds because, if the disputed facts are as Mr. and Ms. Martinez allege

17

them to be, the Officers violated Mr. Martinez's clearly established constitutional right to be free from unreasonable searches and seizures.

### III.   CONCLUSION

For the foregoing reasons, we DENY Mr. and Ms. Martinez's motion to dismiss. We AFFIRM the decision of the district court.

Entered for the Court


Carolyn B. McHugh
Circuit Judge