This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-36592

**MATEO ROMERO,**

       Plaintiff-Appellant,

v.

**CHRISTOPHER MOONEY,
LOUIS CARLOS, in their individual
and official capacities, THE CITY OF
SANTA FE, and JOHN DOE and
JANE DOES (I-V),**

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
David K. Thomson, District Judge**

ACLU of New Mexico
Leon Howard
Kristin Greer Love
Albuquerque, NM

The Lucero Law Office, LLC
Jacob Vallejos
Albuquerque, NM

for Appellant

Robles, Rael & Anaya, P.C.
Luis Robles
David Roman
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}** Plaintiff Mateo Romero brought a civil rights action against Christopher Mooney and Louis Carlos (Defendants), police officers with the Santa Fe Police Department (SFPD), as well as the City of Santa Fe.[1] On appeal, Plaintiff argues that the district court erred in granting Defendants' motion for summary judgment based on qualified immunity because: (1) the officers' detention of Plaintiff was a de facto arrest unsupported by probable cause; and (2) the officers prolonged Plaintiff's detention after their reasonable suspicion to detain him had been dispelled. We affirm.

**BACKGROUND**

**{2}** The material facts in this case are not in dispute. On July 7, 2014, SFPD officers responded to a 911 call from a homeowner, Maria Markus that a burglary was in progress at her residence. Dispatch stated that the homeowner returned home and discovered a person inside a vehicle in her driveway and that she was blocking his vehicle in. Officer Christopher Mooney, who was in his patrol car near the Santa Fe Plaza, was the first to respond to the call. While Mooney was en route to the home, dispatch relayed that the homeowner stated that the man was trying to open her car door and remove her from her vehicle. Dispatch also provided a description of the suspect and the clothing he was wearing.

**{3}** Officer Mooney arrived within three and a half minutes after receiving the dispatch, exited his unit with his service rifle, and spoke with Markus, who remained in her vehicle in the driveway. Mooney asked Markus where the suspect was, and she informed him that he was "standing right behind" Mooney. Mooney noticed that Plaintiff, who matched the description he had received from dispatch, was approximately ten feet away behind Markus's vehicle. Mooney walked toward Plaintiff and ordered him to the ground. Plaintiff raised his hands and complied with the officer's order. In ordering Plaintiff to the ground, Mooney stated that he deployed his service rifle in the low-ready position, where the rifle is held with both hands with the muzzle pointed at the ground in front of the suspect. Once Plaintiff was on the ground, Officer Mooney slung his rifle over his shoulder, handcuffed Plaintiff, and placed him in the back of the police car.

**{4}** Soon after, Captain Louis Carlos and other officers arrived and began an investigation, which included checking the home for signs of an intrusion and determining whether anyone else was inside. Captain Carlos also interviewed Markus. After interviewing Markus, Captain Carlos asked Plaintiff for his account of events. Plaintiff told him that he had pulled into the driveway to clean a mess his dog had made by defecating in his car and that he had done so because he did not believe it was safe to park his car on the shoulder of the road. During this time, officers determined that there were no signs of a break-in at the home. Officer Mooney then removed Plaintiff's handcuffs and released him from detention. In total, Plaintiff was detained for approximately fifteen minutes, and the interaction was recorded on a dash camera video and the officer's belt tape.

---

1John and Jane Does (I-IV) were named in the underlying complaint but are not parties to this appeal.

**{5}** Plaintiff filed a complaint alleging civil rights violations and tort claims against Officer Mooney, Captain Carlos, and the City of Santa Fe. Defendants filed a motion for summary judgment arguing they were entitled to qualified immunity as to Plaintiff's federal claims and dismissal of Plaintiff's state law claims because their conduct was reasonable and lawful. The district court concluded that, based on the undisputed material facts, the officers were entitled to qualified immunity because the evidence did not establish that they violated clearly established law and their actions were objectively reasonable. Because the district court determined that the officers were entitled to qualified immunity on the federal constitutional claims for excessive force (Count I) and unreasonable seizure (Counts II and III), Plaintiff's federal municipal liability claim against the City of Santa Fe was dismissed as well. Finally, because Plaintiff's federal claims failed as a matter of law, the district court determined that Plaintiff's state law claims for assault and battery, excessive force, unreasonable seizure, and municipal liability also fail, and granted the motion for summary judgment dismissing all of Plaintiff's claims.[2] This appeal followed.

## DISCUSSION

### I.     Standard of Review and Qualified Immunity

**{6}** The doctrine of qualified immunity protects government officials, including police officers, from liability for civil claims "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chavez v. Bd. of Cty. Comm'rs of Curry Cty.*, 2001-NMCA-065, ¶ 14, 130 N.M. 753, 31 P.3d 1027 (internal quotation marks and citation omitted). "[Q]ualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law. Put another way, qualified immunity is the usual rule, such that only in exceptional cases will governmental actors have no immunity from [42 U.S.C. § 1983 (2018)] claims." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999-NMCA-073, ¶ 8, 127 N.M. 478, 983 P.2d 427 (internal quotation marks and citations omitted). Because qualified immunity is a defense to suit, rather than simply a defense to liability, it should be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks and citation omitted). Where the material facts are not in dispute, a qualified immunity claim asserted in response to an alleged Fourth Amendment violation presents a question of law that should be decided by the court. *Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 11, 140 N.M. 136, 140 P.3d 1085 (holding that the applicability of qualified immunity is a question of law); *see also Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (holding that on summary judgment, once the relevant facts are determined and the court has drawn all inferences in favor of the nonmoving party, reasonableness of Fourth Amendment seizure is a "pure question of

---

2The district court concluded that, because Plaintiff's constitutional claims against the individual Defendants failed, his claim against the City of Santa Fe (Count IV) and his state law claims (Counts V-VIII) failed as well. Plaintiff does not contest this on appeal, but does assert that "If [he] prevails in this appeal concerning the issues presented herein, his state law claims must also remain as his state law claims were dismissed as a direct result of the dismissal of his Fourth Amendment claims." Because we hold that Plaintiff cannot prevail on his federal civil rights claims, we need not reach the question of whether he has correctly stated the law governing his state law claims.

law"); *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (holding that whether police officers asserting qualified immunity defense to Fourth Amendment claim acted reasonably is a legal determination in the absence of disputed material facts).

**{7}** "On appeal from a grant of summary judgment based on qualified immunity, we view the evidence presented in the light most favorable to the party opposing summary judgment and review the district court's decision de novo." *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 8, 350 P.3d 1234 (alteration, internal quotation marks, and citation omitted). When a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must establish the defendant's actions violated a constitutional or statutory right that was clearly established at the time of the defendant's conduct. *Medina*, 252 F.3d at 1128.

**{8}** We use a two-step analysis when evaluating a claim of qualified immunity: "(1) the defendant's alleged conduct violated a constitutional or statutory right, and (2) the right was clearly established at the time of the conduct." *Benavidez*, 2015-NMCA-065, ¶ 6 (internal quotation marks and citation omitted). A plaintiff must establish the violation of a right with specificity; broad allegations do not satisfy the burden. *Mullenix v. Luna*, ___ U.S. ___, ___, 136 S. Ct. 305, 308 (2015) (noting that the issue is "whether the violative nature of *particular* conduct is clearly established" (internal quotation marks and citation omitted)); *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (holding that a plaintiff must articulate the clearly established right and the conduct that violated the right with specificity). Even if Plaintiff satisfies the first step of the analysis, Defendants are still entitled to qualified immunity if the law governing the violation was not "clearly established" at the time of the alleged violation. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (stating that where a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden). "In evaluating whether the law was clearly established, we ordinarily look to decisions of the United States Supreme Court, the federal courts of appeal, and the highest state court where the cause of action arose." *Chavez*, 2001-NMCA-065, ¶ 20.

## II.     The Means Used to Effectuate Plaintiff's Seizure Were Reasonable, Did Not Amount to a De Facto Arrest, and Did Not Violate Clearly Established Law

**{9}** We first address Plaintiff's contention that the district court erred in ruling Defendants are entitled to qualified immunity because his detention constituted an arrest without probable cause in violation of the Fourth Amendment. Specifically, Plaintiff argues that Officer Mooney impermissibly relied on dispatch and failed to assess independently whether Plaintiff posed a threat or flight risk when he arrived on the scene. He also claims that, with limited exceptions not present here, the use of handcuffs or a gun transforms a detention into a de facto arrest and that Officer Mooney's arrest of Plaintiff was unsupported by probable cause. Finally, he contends, without identifying any disputed material facts regarding Officer Mooney's use of force, that the question of whether excessive force was used to effectuate a detention is a question for the jury and should not have been decided on Defendants' motion for summary judgment. Defendants argue that Mooney had the authority to conduct an

investigatory detention, and that the display of a firearm and use of handcuffs during the detention was reasonably related to the circumstances of the detention.

**{10}** We first address Plaintiff's contention that Officer Mooney failed to corroborate the information from dispatch and, as a result, Officer Mooney was precluded from relying on such information in detaining Plaintiff. The circumstances giving rise to the investigative detention in this case included reports from dispatch of a burglary in progress and of a man trying to pull a woman from her vehicle. Contrary to Plaintiff's assertions, Officer Mooney's observations corroborated several of the details in the dispatch, including that (1) a woman had blocked a vehicle from leaving her driveway by parking her vehicle behind it; (2) a man was standing near the woman's vehicle; and (3) the man standing near the vehicle fit the description from dispatch. As such, Officer Mooney properly relied on information from dispatch in detaining Plaintiff. *See State v. Cobbs*, 1985-NMCA-105, ¶¶ 12-17, 103 N.M. 623, 711 P.2d 900 (concluding reasonable suspicion existed for investigative stop where dispatch described that a possible burglary was in progress and two suspects were in vehicle in back of residence, and the officer observed two individuals in vehicle); *see also Lundstrom v. Romero*, 616 F.3d 1108, 1123-1125 (10th Cir. 2010) (holding detention was unreasonable where officers were unable to confirm any of the facts reported in the 911 call).

**{11}** We next review Plaintiff's claim that Defendants subjected him to a de facto arrest without probable cause. The means used to effectuate an investigatory detention, like its duration, must be measured against the circumstances giving rise to the intrusion in the first instance. *United States v. Neff*, 300 F.3d 1217, 1220 (2002). Where the scope of the detention exceeds these limits, the detention becomes an arrest that must be supported by probable cause. *Id.* The key inquiry, however, is not "whether the force used was so great as to render it an arrest but, instead, whether the force used was reasonable." *United States v. Merritt*, 695 F.2d 1263, 1274 (10th Cir. 1982); *see also Lundstrom*, 616 F.3d at 1120-1122 (holding that neither the use of handcuffs nor of a gun necessarily renders an investigative detention unreasonable). Moreover, courts should refrain from second-guessing the decisions of police officers, who may face dangerous conditions on the scene. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1188 (10th Cir. 2001).

**{12}** "Though some have taken the view that the use of guns automatically turns the stop into an arrest," the Tenth Circuit Court of Appeals has held that "the use of guns in connection with a stop is permissible where the police reasonably believe they are necessary for their protection." *Merritt*, 695 F.2d at 1273 (citation omitted). In this case, the nature of the call suggested the possibility of two serious crimes in progress—assault and burglary—and we have specifically recognized burglary as "the type of crime for which the offender would likely be armed." *Cobbs*, 1985-NMCA-105, ¶ 35. In addition, Officer Mooney was alone when he responded to the call, and while Officer Mooney spoke with Markus, Plaintiff approached him from behind, appearing just ten feet from the officer. Given the foregoing, Officer Mooney acted reasonably when displaying his weapon in a low-ready position and in using handcuffs to secure Plaintiff

until backup officers could arrive and assist with the investigation. *See Lundstrom*, 616 F.3d at 1121-1122 (holding that officer effectuated a reasonable seizure when she briefly pointed her gun at individual because officer's view was obstructed and she became concerned individual was armed); *United States v. Perdue*, 8 F.3d 1455, 1463 (1993) (holding that ordering a suspect to lie on the ground, perhaps in handcuffs, was justified where officers were reasonably concerned for their safety and noting trend that use of intrusive precautionary measures does not necessarily transform lawful investigative detention into an arrest). Under these circumstances, Officer Mooney acted reasonably and did not effectuate an arrest without probable cause in violation of Plaintiff's Fourth Amendment rights.

**{13}** In support of his contention that Officer Mooney's actions amounted to an unlawful arrest, Plaintiff relies primarily on *United States v. Melendez-Garcia*, 28 F.3d 1046 (10th Cir. 1994). In *Melendez-Garcia*, the court held that the use of handcuffs during an investigative detention supported only by the suspicion that the suspects were trafficking drugs was unreasonable because, without evidence that the suspects were violent or had guns, "the naked fact that drugs are suspected will not support a per se justification for the use of guns or handcuffs." *Id.* at 1053. But as already discussed above, Officer Mooney's use of a firearm and handcuffs was not unreasonable under the circumstances. At a minimum, the circumstances in *Melendez-Garcia* are sufficiently different from the circumstances here that it cannot be said that "in the light of pre-existing law[,] the unlawfulness [of the conduct] [would have been] apparent." *Chavez*, 2001-NMCA-065, ¶ 16 (internal quotation marks and citation omitted).

**{14}** Plaintiff also contends that the issue of whether Officer Mooney used excessive force to detain him was a question of fact for the jury. We disagree. Where a defendant raises a defense of qualified immunity, in the absence of disputed material facts, whether the defendant violated clearly established law is a question of law that may and should be adjudicated on a motion for summary judgment. *Medina*, 252 F.3d at 1131; *Starko, Inc.*, 2006-NMCA-085, ¶ 11. Because Plaintiff has not established that any material facts are in dispute, the district court was permitted to decide the question of reasonableness "early in the litigation in order to resolve the 'legal question' presented by a qualified immunity defense." *Medina*, 252 F.3d at 1131. And based on our analysis above, we agree with the district court that Officer Mooney's use of force was objectively reasonable under the circumstances and Plaintiff has failed to establish a violation of clearly established law.

## III.   Defendants' Actions in Detaining Plaintiff Were Reasonable in Scope

**{15}** Plaintiff argues that the district court erred in ruling that Defendants are entitled to qualified immunity because Officer Mooney and Captain Carlos violated his clearly established right under the Fourth Amendment to be released once reasonable suspicion for his detention had been dispelled. Defendants contend that the entire detention was directly related to the reason Plaintiff was first detained and that the officers never tried to extend the investigation in a different direction. We agree with Defendants.

**{16}** "Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether the circumstances, viewed objectively, justify the challenged action." *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (alteration, internal quotation marks, and citation omitted). An investigatory stop must be reasonable at its inception and its scope must be reasonably related to the circumstances that justified the detention. *See United States v. Sharpe*, 470 U.S. 675, 682 (1985) (holding that the reasonableness of an investigative stop depends on whether the stop was reasonable at its inception and reasonably related in scope to the circumstances which justified the interference). In evaluating whether the scope of a detention was permissible, courts cannot refer to a "bright-line" rule but must examine events in light of "common sense and ordinary human experience." *Neff*, 300 F.3d at 1220 (internal quotation marks and citation omitted).

**{17}** Plaintiff contends that any reasonable suspicion that may have arisen because of the 911 call was dissipated once officers "cleared" Markus' house and verified there were no signs of a burglary, and that his detention for approximately six minutes beyond that point was therefore unconstitutional. Plaintiff relies on *United States v. Lopez*, 443 F.3d 1280 (10th Cir. 2006), *United States v. Lambert*, 46 F.3d 1064 (10th Cir. 1995), *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994) and *Martinez v. Mares*, 613 F. App'x 731 (10th Cir. 2015).

**{18}** Neither *Lambert* nor *Lopez* concern whether a detention justified at its inception extended beyond dissipation of reasonable suspicion. Instead, each examines whether specific encounters with law enforcement were consensual or, instead, amounted to investigatory detentions requiring reasonable suspicion. In *Lambert*, the court examined whether a consensual encounter became non-consensual over time, thus subjecting it to Fourth Amendment protection. *See* 46 F.3d at 1067 (stating issues under review as (1) whether a seizure occurred; and (2) if so, whether officers had reasonable suspicion at the time of the seizure). In *Lopez*, the question was whether a specific encounter between law enforcement and a man standing next to a vehicle was consensual. 443 F.3d at 1283. Because the court found that it was not, and the government conceded that no reasonable suspicion supported a detention, the encounter was deemed an unconstitutional seizure. *Id.* at 1286.

**{19}** The remaining two authorities cited by Plaintiff are similarly unavailing. Contrary to the facts in this case, *McSwain* and *Martinez* both concern encounters with law enforcement in which officers could and did dispel reasonable suspicion by conducting a single, discrete, conclusive inquiry, yet nonetheless continued investigatory detentions after that point. In *McSwain*, an officer stopped a vehicle to verify the validity of its registration sticker. 29 F.3d at 561. Once the officer verified that the sticker was valid, the purpose of the stop was satisfied and he was not entitled to continue the detention of the driver to question him about other matters. *Id.* In *Martinez*, an unpublished decision, officers violated the plaintiff's Fourth Amendment rights when they continued to detain him and pat him down after they had readily determined that he was not the man complained of by the 911 caller. 613 F. App'x at 738-39.

**{20}** Unlike the plaintiffs in *McSwain* and *Martinez*, Plaintiff was not detained longer than necessary to dispel the reasonable suspicion that gave rise to his detention in the first place. Here, officers had reasonable suspicion to detain Plaintiff in order to conduct an investigation based on information from a 911 call that: (1) a burglary had been attempted; and (2) a man on the premises had attempted to open the complaining witness's car door and get her out of her vehicle. While Plaintiff contends the second claim was a mistake on the part of the dispatcher, the officers were entitled to rely on information from dispatch when evaluating whether they had reasonable suspicion to detain Plaintiff. *See Cobbs*, 1985-NMCA-105, ¶ 15 (concluding reasonable suspicion existed for investigative stop where officer corroborated facts contained in dispatch).

**{21}** Given the content of the dispatch, as well as Officer Mooney's observations on the scene confirming the presence of two vehicles and two parties as described in the 911 call, it was reasonable for officers to interview Markus and Plaintiff to reconcile their conflicting stories as well as to examine the home for signs of a break-in while Plaintiff was detained. Although Plaintiff argues that he should have been released as soon as the officers determined that the home had not been burglarized, the officers were investigating suspicions of attempted burglary and assault, potential crimes that are not dispelled immediately upon determining that the home had not been burglarized. "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly[.]" *Sharpe*, 470 U.S. at 686. The undisputed evidence established that Officer Mooney, Captain Carlos, and the other officers on the scene worked diligently and efficiently to investigate these suspicions, and that they released Plaintiff promptly once they had done so. Because the officers' investigative steps were "justified at [their] inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place[,]" *State v. Neal*, 2007-NMSC-043, ¶ 18, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted), we perceive no error in the district court's conclusion that Defendants' actions were objectively reasonable and there was no showing that Officer Mooney violated clearly established law. Consequently, we affirm the district court's determination that Defendants are entitled to qualified immunity.

**{22}** Finally, Plaintiff did not raise any separate argument concerning his state law claims on appeal, arguing only that if he prevails on his federal law claims that his state law claims must be reinstated as well. Finding no basis for reversal on the federal claims, we affirm the district court's order granting summary judgment on all Plaintiff's claims. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that this Court does not review unclear or undeveloped arguments on appeal that would require this Court to guess at what a party's arguments might be).

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm.

**{24}** IT IS SO ORDERED.

BRIANA H. ZAMORA, Judge

WE CONCUR:

JENNIFER L. ATTREP, Judge

MEGAN P. DUFFY, Judge